## In re FOX ISLAND SQUARE PARTNERSHIP, Debtor.

### Bankruptcy No. 88 B 7277.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 27, 1989.

---

Lewis S. Rosenbloom, Jim L. Blanco, David B. Love, George G. Love, II, Winston & Strawn, Chicago, Ill., for debtor.

Harold L. Moskowitz, Robbins, Rubinstein, Salomon & Greenblatt, Ltd., Chicago, Ill., for petitioning partners.

## MEMORANDUM OPINION REGARDING THE APPLICATION OF CHARLES D. FREY, III FOR SANCTIONS AND FOR THE ASSESSMENT OF PUNITIVE DAMAGES

SUSAN PIERSON DeWITT,
Bankruptcy Judge.

This matter comes before the Court on the Application of Charles D. Frey, III for Recovery of Costs and Expenses from Petitioners and their Counsel and for the As-

sessment of Punitive Damages (the "Application"), the Memorandum of Points and Authorities in Support of the Application, the Supplemental Statement in Support of the Application, the Griffins' Response to the Application, the Reply Memorandum of Charles D. Frey, III in Support of the Application, the Reply of Charles D. Frey, III to Petitioners' Answer to the Application, the Supplemental Memorandum of Law in Support of the Application, the Petitioners' Supplemental Memorandum of Law in Opposition to the Application, and the Supplemental Reply Memorandum of Charles D. Frey, III in Support of the Application. Now, therefore, for the reasons set forth below, the Application is granted in part and denied in part.

### Facts

On May 9, 1988, the Estate of Gerald F. Griffin, Betty S. Griffin, Patrick Griffin, Glenn Griffin, and Gerald Griffin, II (collectively the "Petitioners") filed an Involuntary Petition for Relief under Chapter 11 of the Bankruptcy Code against the Fox Island Square Partnership (the "Partnership"). The Petitioners were general partners of the Partnership, and they collectively held a 75% interest in the Partnership. On May 24, 1988, Charles D. Frey, III ("Frey") filed an Answer and a Motion for Dismissal, Abstention or Related Relief. Dr. George Sisson ("Sisson") filed a pleading incorporating by reference the pleadings filed by Frey. Frey and Sisson were also general partners of the Fox Island Square Partnership.

The Petitioners filed a two page Involuntary Petition, verified by Glenn Griffin and signed by Harold Moskowitz, an attorney with Robbins, Rubinstein, Salomon & Greenblatt, counsel for the Petitioners. Paragraph 5, the only substantive paragraph in the entire Involuntary Petition, provides that "the Debtor is generally not paying its debts as they become due as indicated by that complaint for foreclosure by the Oak Park Trust and Savings Bank, now known as First National Bank of Oak Park." Further the Petitioners filed a list of four creditors, Oak Park Trust and Savings Bank, Kane County Collector's Office,

Charles Frey, and George Sisson, M.D. The Involuntary Petition, however, failed to state whether any of the debts were disputed.

In July of 1987, the First Chicago Bank of Oak Park ("Oak Park") filed two lawsuits against the Partnership in the Circuit Court of Kane County, Illinois. The first was a Complaint to Foreclose on a mortgage on an office building, known as Fox Island Square, located in Kane County. Fox Island Square was owned by a land trust, and the Partnership owned the beneficial interest in the land trust. Additionally, Oak Park filed a Complaint at Law against the Partnership, the partners and others, which asserted liability under a note, mortgage, "master lease" and guaranty.

In September of 1987, prior to the filing of the defendants' answers and counterclaim, Oak Park moved for summary judgment against all of the defendants. Frey and Sisson did not respond to or contest the motion for summary judgment. In December 1987, the circuit court denied the motion for summary judgment. Thereafter, the parties conducted discovery, and discovery was closed on May 6, 1988.

On or about November 17, 1987, the defendants individually and on behalf of the Partnership filed their Counterclaim against Oak Park for breach of contract and bad faith dealing. On May 2, 1988, Oak Park moved to dismiss the Counterclaim. In response, Petitioners agreed to amend the Counterclaim.

On May 9, 1988, the same day the Involuntary Petition was filed, the Petitioners filed their First Amended Counterclaim which alleged at least five different theories. First, the Petitioners alleged that the debt was unenforceable because of Oak Park's misconduct. Second, they alleged that Oak Park was estopped from accelerating the debt. Third, the Petitioners contended that Oak Park's breach of the alleged restructuring agreement prohibited enforcement of the debt, and fourth, the Petitioners contended that Oak Park's alleged breach of the duty of good faith and

fair dealing precluded enforcement of the Oak Park debt. Lastly, the Petitioners alleged that Oak Park's intentional interference with the Partnership excused the Griffins and the Partnership from further performance under the notes.

On April 21, 1988, the Petitioners filed a Motion to Transfer Venue of the Foreclosure Proceeding because of Judge Colwell's alleged bias. The state court denied the Motion. Subsequently, on May 12, 1988, three days after the bankruptcy filing, the Petitioners presented a Petition to the bankruptcy court to enjoin Oak Park from proceeding on the Petitioners guaranties. The Petition was denied without prejudice, however, in light of Oak Park's representation that, because the automatic stay precluded any actions against the Partnership, Oak Park would not proceed on the guaranties of the Petitioners. On June 7, 1988, Frey filed a Motion for a Temporary Restraining Order to enjoin "interference with the management and operation of the building," and the Court granted the Motion and issued a Temporary Restraining Order.

The Court conducted a trial on the Involuntary Petition on June 27, 1988, July 5, 1988 and July 8, 1988. The Court heard over twenty hours of testimony and reviewed several dozens of documents that were admitted into evidence. On July 18, 1988, the Court entered Findings of Fact, Conclusions of Law and an Order denying the Involuntary Petition and dismissing the case because the Court found that the Partnership was generally paying its debts and that the Oak Park debt was not the Partnership's debt, and even if it was, it was disputed. The Court also granted Frey's Motion for Abstention, Dismissal and Other Relief. The Petitioners subsequently filed a Motion for Reconsideration which was denied.

On August 2, 1988, Frey filed the pending Application for the Recovery of Costs and Expenses and for the Assessment of Punitive Damages. In his Application, Frey alleges that the Petitioners are liable for his costs and attorney fees pursuant to Section 303(i) of the Bankruptcy Code, pursuant to Bankruptcy Rule 9011, and pursuant to Section 1927 of Title 28 of the United States Code. Frey requests attorney fees in the amount of $58,002.50 plus $4,744.00 in disbursements. Furthermore, Frey requests in excess of $3,000 for his travel costs to and from Naples, Florida on four separate occasions for depositions or hearings. The issues have been fully briefed, and the Court will address each argument separately.

**A. Section 303(i) of the Bankruptcy Code.**

Section 303 of the Bankruptcy Code provides:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for

(A) any damages proximately caused by such filing; or

(B) punitive damages.

■ The use of the word "or" in Section 303(i) does not make an award of fees, costs, compensatory damages or punitive damages exclusive. H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. *See also, In re Camelot, Inc.*, 25 B.R. 861 (Bankr.E.D.Tenn.1982), *aff'd*, 30 B.R. 409 (Bankr.E.D.Tenn.1983); *In re Ramsden*, 17 B.R. 59 (Bankr.N.D.Ga.1981); 11 U.S.C. § 102(5). Accordingly, the Court may award costs, fees, compensatory damages and/or punitive damages under Section 303(i). The Debtor, however, is not automatically entitled to such costs, fees and/or damages. Any such award is solely within the Court's discretion. *See Camelot*, 25 B.R. at 861; *In re R.V. Seating, Inc.*, 8 B.R. 663 (Bankr.S.D.Fla.1981).

Unlike Section 303(i)(2), Section 303(i)(1) does not require a bad faith finding. Few courts, however, have assessed costs and attorney fees pursuant to Section 303(i)(1) absent a bad faith finding. *See In re Allen Rogers and Co.,* 34 B.R. 631 (Bankr.S. D.N.Y.1983); *Camelot,* 25 B.R. at 861. It is apparent from the alternative provisions of Section 303(i)(1) and (2) that Congress "sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created." *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 702 (D.Colo.1984). Moreover, the statute does not provide for an award against the petitioners' attorney. *Id., citing, In re Grecian Heights Owners' Association,* 27 B.R. 172 (Bankr.D.Or. 1982); *Ramsden,* 17 B.R. at 59. "When a judgment is entered against creditors whose actions were predicated upon faulty legal advice, the creditor's remedy is elsewhere to be resolved." *Id.*

In this case, Frey alleges that he is entitled to reasonable fees and costs and punitive damages pursuant to Section 303(i) because the Involuntary Petition was filed to delay the state court foreclosure proceeding as it was filed just seven days before the state court trial date. Further, Frey alleges that the Petitioners filed a twenty-three page counterclaim disputing the enforceability of the Oak Park debt and asserting several offsetting claims. Thus, Frey contends that the Petitioners could not have believed in good faith that the Involuntary Petition stated a claim for relief because Section 303(h)(1) requires that the debts upon which the Petition is based be undisputed. Accordingly, Frey concludes that in light of the facial inadequacy of the Involuntary Petition and the Petitioners continued persistence in pursuing such Petition an imposition of sanctions and punitive damages under Section 303(i) is warranted.

■ In response, the Petitioners argue that Frey is not the Debtor and, thus, is not entitled to reasonable costs and fees pursuant to Section 303 of the Bankruptcy Code, and the Petitioners argue that the Involun-

tary Petition was filed to reorganize the Partnership not delay the state foreclosure proceeding. As a preliminary matter, the Court finds that for all intents and purposes, Frey, as the non-petitioning partner who attempted to save the Partnership from bankruptcy, represented the Partnership and thus may seek an award under Section 303.

■ The Court has reviewed the two page Involuntary Petition filed by the Petitioners and finds that, while on its face it meets the requirements of Official Form 12, it fails to state, in accordance with Section 303(h) of the Bankruptcy Code, whether the Oak Park debt is disputed. In light of the Counterclaim, it is abundantly clear that the Petitioners as well as their attorneys were well aware that the Oak Park debt was highly disputed. Had counsel listed the debt as disputed, the Petition on its face would have lacked merit. Accordingly, the Court finds that Frey is entitled to reasonable costs and attorney fees under Section 303(i)(1). The precise amount of the reasonable fees and costs will be discussed later in this decision.

■ Next, in order for the Court to assess punitive damages pursuant to Section 303(i)(2), the Court must find that the Petitioners filed the Involuntary Petition in bad faith. Whether a creditor acted in bad faith is a question of fact. *Advance Litho,* 46 B.R. at 704. The courts, however, have applied different tests to determine whether the Involuntary Petition was filed in bad faith. Some courts use an objective test which asks whether a reasonable person would have filed. *In re Wavelength,* 61 B.R. 614, 620, (Bankr.9th Cir.1986), *citing, Grecian Heights,* 27 B.R. at 173; *In re Midwest Processing Co.,* 41 B.R. 90, 102 (Bankr.D.N.D.1984). Other courts look at the creditor's motives and conduct, thus, applying a subjective standard. *See Basin Electric Power Cooperative v. Midwest Processing Co.,* 47 B.R. 903, 909 (N.D. 1984), *aff'd,* 769 F.2d 483 (8th Cir.1985), *cert. den.,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Still other courts combine both approaches and use a two-part test. *See e.g., United States Fidelity &*

*Guar. Co. v. DJF Realty & Supplies*, 58 B.R. 1008, 1101 (Bankr.N.D.N.Y.1986); *In re Molen Drilling Co., Inc.*, 68 B.R. 840, 844 (Bankr.D.Mont.1987); *In re McDonald Trucking Co., Inc.*, 76 B.R. 513 (Bankr.W. D.Pa.1987); *In re Turner*, 80 B.R. 618 (Bankr.D.Mass.1987); *In re Petralex Stainless, Ltd.*, 78 B.R. 738 (Bankr.E.D.Pa. 1987). Accordingly, the Court must first decide which standard to apply.

In *In re Turner*, the bankruptcy court held:

> Rule 9011 appears to be all-encompassing in the indicia of bad faith which it sets forth, including a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law. It is therefore logical to adopt its standards in a § 303(i)(2) case in order to avoid conflicting standards . . . Use of the Rule 9011 standards as the measure of bad faith under § 303(i)(2) would, furthermore, be consistent with the standards of bad faith developed by the courts for the dismissal of a voluntary petition under 11 U.S.C. § 1112, where courts have created a bad faith ground for conversion or dismissal even though it is not one of the grounds listed in the statute. *See In re Bible Speaks*, 65 B.R. 415 (Bankr.D. Mass.1986). The adoption of such objective and subjective standards of good faith under § 303(i)(2) is also consistent with the concept of the good faith required of a merchant under Article 2 of the Uniform Commercial Code . . .

80 B.R. at 623. In light of the *Turner* decision and its progeny, the Court finds that bad faith, pursuant to Section 303(i)(2) should be measured by the objective and subjective standards required under Bankruptcy Rule 9011.

As to the purpose of punitive damages, the court held in *Advance Litho*:

> In *Grecian Heights*, the court discussed the purpose of punitive damages—to deter similar acts in the future. This deterrent should be directed not merely to the petitioning creditor in the case at bar, but also should serve as an example for similar circumstances in future cases.

> Punitive damages are also assessed as punishment to the defendant-creditor for wrongdoing in filing the Involuntary Petition in bad faith.... The imposition of these damages must be considered in connection with the award of other damages and fees if the purpose of punitive damages is to be effective and yet not unduly harsh.

46 B.R. at 706.

■ The Court has reviewed and considered the facts surrounding the filing of the Involuntary Petition and finds that it was filed in bad faith. In July of 1987, Oak Park filed two suits against the Partnership in state court. After a motion for summary judgment was denied, discovery went forward and closed on May 6, 1988, approximately 10 months after the case was filed. Shortly thereafter, the Petitioners filed a twenty-three page Counterclaim against Oak Park alleging the theories set forth on Page 965 and Page 966 of this decision. On April 22, 1988, approximately three weeks before the trial date, the Petitioners filed a Motion for a Change of Venue because of Judge Colwell's alleged biases. When that Motion was denied and it looked like the foreclosure action was going to trial on May 16, 1988, the Petitioners decided to file the Involuntary Petition to delay the foreclosure proceedings. The Petitioners, however, argue that they filed to reorganize the Partnership. While the Court does not dispute that the Petitioners may have thought about reorganizing the Partnership, it is the timing of the filing that draws suspicion. If the Petitioners were so concerned with a reorganization, it appears that the Involuntary Petition would have been filed significantly earlier.

■ Additionally, the Court finds that the Involuntary Petition was filed in objective bad faith because it was not based on reasonable inquiry. At the time the Petitioners filed the Involuntary Petition, they knew the Oak Park debt was highly disputed, and they knew or reasonably should have known that the Oak Park debt was not a Partnership debt because the property belonged to a land trust. Furthermore, although the Petitioners alleged at trial

that the utilities were not being paid, they failed to investigate the matter prior to filing, and the Court found that the utilities were being paid. Therefore, the Court finds that the Involuntary Petition was filed in subjective and objective bad faith, and accordingly Frey is entitled to punitive damages. Because the amount of punitive damages is to be considered in connection with the award of reasonable attorney fees and costs, the Court finds that the Petitioners are jointly and severally liable to Frey in the amount of $500.00 for punitive damages.

## B. *Bankruptcy Rule 9011*

Bankruptcy Rule 9011, which tracks Rule 11 of the Federal Rules of Civil Procedure, provides in pertinent part:

(a) **Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for an improper purpose, such as to harass, to cause delay, or to increase the cost of litigation ... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person *who signed it, the represented party, or both,* an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. (Emphasis added.)

■ Recently, in *In re Chicago Midwest Donut, Inc.,* the bankruptcy court held that the Seventh Circuit is not reluctant to impose sanctions where appropriate. The bankruptcy court went on to say:

As determined in *Dreis,* [*& Krump Manufacturing Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8* ] 802 F.2d [247] at 255, [ (7th Cir.1986) ], mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation warrant imposition of sanctions on persons and firms that abuse their right of access to the federal courts. The rules designed to discourage groundless litigation are being and will continue to be enforced on this Circuit "to the hilt."

Nonetheless, there is always a need to avoid chilling the discretion of attorneys in the proper vigorous advocacy of their clients' interests. Therefore, attorneys should only be penalized where they have failed to maintain a minimum standard of professional responsibility, viewed objectively. *Lepuki v. Van Wormer,* 765 F.2d 86, 87 (7th Cir.) (per curiam), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985).

82 B.R. 943, 948 (Bankr.N.D.Ill.1988). Accordingly, the bankruptcy court can assess Rule 11 sanctions in four circumstances; when a reasonable inquiry of the relevant facts and law was not conducted; when the pleading filed was not well grounded in fact; when the pleading was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or when the pleading was interposed for an improper purpose, such as harassment, delay or an unnecessary increase in cost.

■ In this case, the Petitioners failed to conduct a reasonable inquiry into the relevant facts and law. Had Mr. Winters and Mr. Moskowitz done so, they would have discovered that the debts allegedly owed were not debts of the Partnership but were debts of the land trust. Moreover,

even if the Oak Park debt was a Partnership debt, had they looked at the relevant case law, they would have discovered that the Oak Park debt was considered a disputed debt and thus not included in the debts the debtor was allegedly not generally paying pursuant to Section 303(h)(1). In fact, contrary to the statutory law, the Petitioners cite *In re Covey*, 650 F.2d 877 (7th Cir.1981), for the proposition that disputed claims are to be considered in an involuntary case.

Petitioners' reliance on the *Covey* decision, however, is clearly misplaced. At the time *Covey* was decided Section 303(h)(1) only required that the debtor generally not pay its debts as they become due. Subsequently, in 1984, Congress amended Section 303(h)(1) to exclude disputed debts from the determination of whether the debtor was generally not paying its debts. Since the amendment, the Seventh Circuit has recognized the fact that the amendment overruled the *Covey* decision. *See In re Busick*, 831 F.2d 745, 749 n. 2 (7th Cir.1987); *In re Reid*, 773 F.2d 945, 947 (7th Cir.1985). Even after Mr. Winters and Mr. Moskowitz were informed that they were proceeding on an overruled case, they continued to argue the merits of the *Covey* decision. Furthermore, the Court has already found that the Involuntary Petition was filed for the improper purpose of delaying the state foreclosure proceeding. Accordingly, the Court finds that, in accordance with the mandate of Bankruptcy Rule 9011, it must impose sanctions against Robbins, Rubinstein, Salomon & Greenblatt, Ltd. and the Petitioners. Furthermore, the Court finds that the appropriate sanction in this case will be reasonable attorney's fees and costs incurred by Frey. The exact amount of those fees and costs will be discussed later in this decision.

C. *Section 1927 of the Judiciary Act*

 Section 1927 of the judiciary Code provides:

Counsel's liability for excessive costs. Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

Thus, if an attorney proceeds down a path that a reasonably careful attorney would have known to be unsound after appropriate inquiry such conduct is objectively unreasonable and vexatious. *In re TCI, Ltd.*, 769 F.2d 441 (7th Cir.1985). In *TCI, Ltd.*, the Seventh Circuit held that "a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *Id.*

 In this case, it is clear that the Petitioners proceeded notwithstanding the relevant case law overruling *Covey* and notwithstanding the fact that the debts owed were not debts of the Partnership. Accordingly, sanctions under Section 1927 are appropriate.

In summary, this Court finds that the Petitioners and Robbins, Rubinstein, Salomon & Greenblatt are subject to sanctions pursuant to Section 303 of the Bankruptcy Code, pursuant to Bankruptcy Rule 9011 and pursuant to Section 1927 of the Judiciary Act.

D. *Amount of Reasonable Attorney Fees and Cost to be Awarded*

 Section 303 and the case law interpreting it, do not clearly set forth the standards for finding whether an attorney's fee is warranted. At a minimum, however, the attorney's fee should be reasonable. *Wavelength*, 61 B.R. at 621, *citing, York Int'l Bldg., Inc. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975). An award should be premised on the detailed accounts of services rendered. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 (9th Cir. 1985). Thus, "although the type of fee application used in Section 330 awards is not required, the records submitted for a Section 303 award should clearly identify the nature of the work performed, its relevance to the defense of the involuntary

petition, and the time expended." *Wavelength,* 61 B.R. at 621.

 The Petitioners allege that, notwithstanding the fact that Frey is not entitled to costs and expenses, Frey failed to mitigate his damages as required by the Seventh Circuit. *See Dubisky, Trustee v. E. Keith Owens, et al.,* 849 F.2d 1034 (7th Cir.1988). A party defending a frivolous action has a duty to resolve the issues quickly and efficiently. *See Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1433 (7th Cir.1987). The Court has reviewed the record in this case and finds that the Petitioners made every effort to mitigate the damages, including informing the Petitioners' counsel on several occasions that they were proceeding under overruled case law.

In this case, however, the Court will deny Frey's request in excess of $3,000 for travel expenses because he has failed to provide the Court with any documentation to support the request. Additionally, the Court will deny Frey's requests for $47.45 for business meals, $20.00 for Secretarial Overtime/Meal Allowance and $27.70 for courier charges because, absent extraordinary circumstances, they constitute overhead.

Upon carefully reviewing the time records submitted, the Court finds that this case was clearly "overlawyered" as ten attorneys performed services for the Petitioners, and on several occasions, three attorneys appeared for court hearings while Mr. George Love, II primarily tried the case. Additionally, a substantial amount of time was unnecessarily spent conducting inter-office conferences among the attorneys. Moreover, the Court finds that the 66.25 hours spent by J. Rhiner researching Rule 9011 Sanctions were excessive. Accordingly, the Court will reduce Frey's attorney fee request to $29,001.25 (½ of $58,002.50).

Lastly, the Court finds that the lengthy court time expended increased because of the personality conflicts between the attorneys for the parties. Accordingly, the Court will reduce Frey's request by an additional $5,000. Thus, the Court will award Frey $24,001.25 for attorney fees and $4,649.29 for expenses for a total award of $28,650.54.

IT IS HEREBY ORDERED THAT:

1. The Petitioners are jointly and severally liable to Charles D. Frey, III in the amount of $500.00 for punitive damages imposed under Section 303(i)(2) of the Bankruptcy Code.

2. The Petitioners and Robbins, Rubinstein, Salomon & Greenblatt are jointly and severally liable to Charles D. Frey, III in the amount of $28,650.54 for attorney fees and costs assessed pursuant to Section 303(i)(1) of the Bankruptcy Code, Bankruptcy Rule 9011 and Section 1927 of the Judiciary Act.

3. The fee award shall be paid within thirty days from the date of this Order.