### In re VAL W. POTEREK & SONS, INC., Debtor.

### Bankruptcy No. 93 B 22051.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 19, 1994.

---

**10.** Applying the standards set out in *Sanders* would lead to the same conclusion.

Joel A. Schechter, Grossman Mitzenmacher & Schechter, Chicago, IL, for alleged debtor.

Irving S. Capitel, Siegel Lynn & Capitel, Northbrook, IL, for Jerome Skiba.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW FOLLOWING HEAR-ING ON MOTION FOR FEES UNDER § 303 AND SANCTIONS UNDER RULE 9011*

(Amended and Reissued July 19, 1994)

JACK B. SCHMETTERER, Bankruptcy Judge.

This action was commenced by filing on October 21, 1983 of an involuntary petition under 11 U.S.C. § 303 against Val Poterek & Sons, Inc. ("Poterek & Sons"), the alleged debtor. On December 8, 1993, this Court dismissed the involuntary petition, but reserved jurisdiction over whether debtor is entitled to attorneys' fees, costs, and punitive damages under § 303(i) arising out of the improper bankruptcy filing. Jurisdiction was also retained to determine whether sanctions under Fed.R.Bankr.P. 9011 should be imposed against the three petitioning creditors and their counsel. A hearing was held on the motions of Poterek & Sons for relief under both provisions.

For reasons that follow, the Court entirely denies debtor's motion under § 303(i) and Rule 9011 to the extent they lie against petitioning creditors Goodmark Foods ("Goodmark") and the Estate of Esther Skiba Testamentary Trust (the "Esther Skiba Trust"). However, attorneys' fees are allowed in the amount of $7,100.00, plus allowable damages, for a total of $10,218.80 against the creditor, Jerome Skiba ("Skiba"). Further, sanctions under Fed.R.Bankr.P. 9011 are allowed against both Skiba and his counsel, Irving S. Capitel ("Capitel"), each in the amount of $1,000.00.

The discussion that follows will stand as Findings of Fact and Conclusions of Law under Fed.R.Bankr.P. 7052.

### FINDINGS OF FACT

Poterek & Sons is a family-owned and operated business formed over 50 years ago to sell tobacco and candy products to retailers. Its sources of those products have been major cigarette and candy companies. Prior to filing of the involuntary bankruptcy petition, Poterek & Sons was on open credit terms with those distributors. Its creditors would ship the goods, and Poterek & Sons would pay later.

John Poterek is the current President of Poterek & Sons. His cousin, Skiba, is one of the petitioning creditors and was formerly an officer and director of the alleged debtor. He left his employment with Poterek & Sons to work for City Sales, one of its competitors. Skiba is alleged to have taken some of Poterek & Son's clients with him when he left, and some evidence supported that contention, but no finding is necessary nor is one made on that allegation. Skiba is still a shareholder of Poterek & Sons. He has filed a state court action in the Chancery Division seeking

dissolution of the corporation. That action has not yet been adjudicated.

Pursuant to 11 U.S.C. § 303, when a debtor has more than twelve creditors, at least three must join together to file an involuntary petition against debtor. Here there were many more than 12 creditors of the alleged debtor when the involuntary petition was filed, so three petitioning creditors were required. In this case, one petitioning creditor (Goodmark) was originally a trade creditor. The other two petitioning creditors (Skiba and the Esther Skiba Trust) had claims for family loans to Poterek & Sons. However, neither Goodmark nor Skiba were actually creditors when the petition was filed.

### The Goodmark Foods Claim

Goodmark's asserted claim of $688.85 was a trade debt allegedly due from Poterek & Sons. Goodmark had earlier initiated two state court actions against debtor to collect that debt. Both cases were voluntarily dismissed. In the second case, No. 93 MI 130314, in the Circuit Court of Cook County, Illinois, Poterek & Sons had filed a counterclaim. When the state court agreed to dismiss the suit against Poterek & Sons, that court also entered judgment against Goodmark on the Poterek & Sons Counterclaim in the amount of $1,302.78 plus costs. This took place before the involuntary petition was filed herein.

While an attorney for Goodmark who had filed suit was present at the hearing dismissing Goodmark's complaint, that attorney did not enter a formal written appearance on the counterclaim. Poterek & Sons did not otherwise inform any representative of Goodmark that a judgment had been entered against it on the counterclaim. There was no testimony as to whether the Goodmark attorney who was in the courtroom informed his client that judgment had been entered against it on the counterclaim, although that attorney did receive a copy of the judgment order. Poterek & Sons has taken no steps to collect that judgment.

Assuming, without deciding, that the original Goodmark claim survived these events, that claim is smaller than the counterclaim judgment against Goodmark. Accordingly, when the involuntary petition was filed, no debt was due from Poterek & Sons to Goodmark.

### Claims of Skiba and the Esther Skiba Trust

Skiba's claim against debtor arose from a loan he made to Poterek & Sons on December 26, 1987. The loan was in the amount of $40,000.00 plus interest at prime plus 1%. It was to be a short-term loan.

The debt owed from the alleged debtor to the Esther Skiba Trust arose from two promissory notes given by Poterek & Sons to the decedent Esther Skiba (who was Skiba's mother) in return for her loans to it. The first note, dated January 1, 1987, was in the amount of $120,610.01. The second note, for the amount of $150,000.00, was dated December 28, 1987. The involuntary bankruptcy petition alleged the amount outstanding on the two notes as $124,027.00 plus interest.

Esther Skiba died on or about January 12, 1988. Following his mother's death, Skiba was appointed as executor of her estate. He advanced funds from his personal account to pay the decedent's medical bills and funeral costs, which totaled between $20,000.00 and $22,000.00. He also provided his sister with an advancement on her testamentary bequest in the amount of $5,000.00. After advancing his personal funds to pay the foregoing debts of the estate, he urged Poterek & Sons to repay the notes due to the Esther Skiba Trust and/or the Esther Skiba Estate. Suit was later filed in the Circuit Court of Cook County to collect on those notes. Judgment in that action was entered on March 30, 1994, in favor of the plaintiff (the Esther Skiba Trust) in the amount of $335,286.28.

### The 1988 Payment

Skiba now contends that Poterek & Sons did respond to his request in 1988 for payment on the two notes due to the Esther Skiba Trust and that it then paid him $42,-821.05 on September 5, 1988 to reimburse his personal expenses on behalf of the Esther Skiba Estate. There is no doubt that the alleged debtor did make that payment. However, the payment was by check payable

to Skiba individually, not to the Esther Skiba Trust or Estate. Poterek & Sons contends that this check was repayment of all the money due Skiba personally on his loan, rather than a payment to the Esther Skiba Trust or Estate.

From the evidence, it is quite clear that the $40,000.00 debt owed by Poterek & Sons to Skiba was paid with interest in September 1988 by the $42,821.05 check. That check was payable to Skiba personally, not to the Esther Skiba Trust. Skiba deposited that check directly into his personal account, even though there was an account open for the estate at that time. If Skiba understood that the money was remitted to reimburse him for funds he advanced on behalf of the Esther Skiba Trust, he would likely have deposited the check into the Esther Skiba Estate's account and used it to reimburse himself out of that account for advances he made totalling under $27,000.00.

In January 1994, Skiba filed an affidavit in the state court action, claiming the amount due to the testamentary trust in that action. Importantly, he did not then credit the $42,-821.05 he now contends was received by him in 1988 on behalf of the Esther Skiba Trust, indicating that he treated the earlier payment as repayment of the personal debt to him.

Additionally, Skiba has filed a shareholder derivative action, seeking dissolution of the corporation in the Chancery Division of the Cook County Circuit Court. At no point in the state court litigation did he seek repayment of the old $40,000.00 debt now allegedly still due him. This further supports the conclusion that he treated the $42,821.05 check as full payment of the personal debt owed to him until he joined in the involuntary petition claiming that the debt to him was still due. Indeed, the weight of the evidence clearly showed that Skiba's loan was paid off in 1988.[1]

## Consequences of the Bankruptcy

On October 21, 1993, the involuntary bankruptcy petition was filed herein against Poterek & Sons by the three alleged creditors. Shortly thereafter, the credit terms available to Poterek & Sons from its suppliers became much more restrictive. Many creditors insisted on wire transfers of payment before or when goods were shipped. Each time Poterek & Sons used the electronic transfer process, it was charged $25.00 by its bank. There were 59 electronic transfers after the involuntary petition was filed, for a total cost of $1,475.00. Of those transfers, 21 were between the date the involuntary petition was filed and the date the petition was dismissed, for a cost of $525.00 during that period. Some creditors also restricted the amount of goods they would ship to debtor.

When the credit terms were changed and the company essentially was put on a C.O.D. basis in order to do business, its bank account balance dropped sharply. This resulted in its bank charging additional service charges in the amount of $382.50 during the period affected by bankruptcy. Poterek & Sons also had to get a loan in the amount of $30,000.00, at an interest rate equal to prime rate plus 2%, from Raypo Enterprises on November 15, 1993 to maintain its inventory. All of the stock of Raypo Enterprises is owned by members of John Poterek's family. However, between the time of the bankruptcy filing and the time of its dismissal, Poterek & Sons paid interest on that loan from Raypo Enterprises, and the Raypo loan was both necessary and bona fide.

## Bond Requirement and Dismissal

On October 28, 1993, Poterek & Sons moved to dismiss the involuntary petition. On November 4, 1993, it moved to require petitioning creditors to file a bond. Following a hearing, the latter motion was allowed

---

1. The evidence did not demonstrate how the interest was calculated to arrive at the $42,821.05 payment a little more than 8 months after the loan by Skiba was made at prime plus 1%, nor was the prime rate during the period testified to. However, if the total interest rate on the note was in the range of 10%, then the interest for 8 months and 10 days would have amounted to approximately $2,821.05, the amount actually paid to Skiba as interest. In other words, the approximate amount of interest due Skiba on September 5, 1988 was about what he in fact received, thus further supporting the finding that the repayment was on his debt, not that of the Esther Skiba Estate or Trust.

on November 24, 1993. Petitioning creditors were required to post a $10,000.00 bond by cash or surety. However, that bond was never posted.

The involuntary petition was dismissed on December 8, 1993, on motion of Poterek & Sons. While creditors' counsel had belatedly filed their own motion to dismiss, that motion came after that of the alleged debtor. In the dismissal order, it was found that Goodmark did not qualify as a petitioning creditor under § 303(b) because it was a debtor, not a creditor, of Poterek & Sons. That meant that the requirement for three creditors to file the involuntary petition had not been met. At the time of the dismissal, that finding was acknowledged by petitioners' counsel to be accurate, so there was no need then to take evidence on that or the other alleged debts.

### The Instant Motion

Poterek & Sons now seeks costs, attorneys' fees, and punitive damages under 11 U.S.C. § 303(i) against all petitioning creditors for the improper filing of the involuntary bankruptcy petition. It also seeks imposition of a sanction under Fed.R.Bankr.P. 9011 against petitioning creditors and their counsel for their signed assertion that Goodmark and Skiba were creditors. A hearing with evidence on these issues was held.

Poterek & Sons argues that Goodmark could or should have known that it was no longer a creditor of Poterek & Sons, that its state court lawyer's knowledge of the counterclaim judgment is imputed to Goodmark. Moreover, it argues under Rule 9011 that Attorney Capitel, who assisted Goodmark in filing the involuntary petition, had a duty to inquire whether there was litigation pending over the Goodmark claim, and otherwise to make reasonable inquiry to ascertain whether Goodmark did in fact have a claim against Poterek & Sons that was not disputed under 11 U.S.C. § 303(b)(1). Pursuant to § 303(b)(1), an involuntary petition may only be filed by "three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute...." Therefore, movant argues that counsel for petitioner did not adequately inquire into the Goodmark claim which was crucial to the involuntary petition. Movant also points to evidence previously cited to establish that the debt allegedly owed to Skiba had been satisfied by the $42,821.05 check transmitted September 5, 1988. It argues that Skiba therefore filed the petition in bad faith when he claimed that debt was still due and that his counsel failed to make proper inquiry into that asserted debt.

The creditors argue that in good faith Goodmark believed it still held a valid claim against debtor. They also argue that the $42,821.05 check tendered to Skiba was in fact a part payment of debt due to the Esther Skiba Trust, and therefore there is still an outstanding debt owed to Skiba. They also maintain that they have not acted in bad faith during the pendency of these proceedings as evidenced by the fact they moved to dismiss the involuntary petition shortly after learning that Goodmark was no longer a creditor.

At the evidentiary hearing held on these matters, creditors' counsel moved for a directed verdict following close of movant's case. The Court then granted a partial directed verdict, dismissing the Esther Skiba Trust under the § 303(i) motion and also from the Rule 9011 sanction motion. The Esther Skiba Trust was found to be a creditor of the Debtor, entitled to file the involuntary petition and was not responsible for any improper pleadings filed by other creditors or counsel.

For reasons stated below, Skiba is found to have filed the involuntary petition in bad faith, but not Goodmark. Fact statements contained in the following Conclusions of Law and also in remarks by the Court from the bench following trial will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

#### Jurisdiction

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(C).

### Awards Under § 303(i)

Petitioning creditors assume certain risks when deciding to file an involuntary bankruptcy petition. *In re Reveley,* 148 B.R. 398 (Bankr.S.D.N.Y.1992). Should the petition be dismissed other than upon consent of all parties, Bankruptcy Code Section 303(i) permits the court to award costs and attorneys' fees and also to award compensation for damages resulting from a petition filed in bad faith, along with punitive damages. 11 U.S.C. § 303(i)(1) and (2).[2] In this case, the petition was dismissed on motion of the alleged debtor before petitioners were ready to bring on their dismissal motion for decision.

However, the awarding of fees, costs, and damages in such cases is not automatic, but is committed to the sound discretion of the court. *In re Reid,* 854 F.2d 156, 159 (7th Cir.1988); *In re Better Care, Ltd.,* 97 B.R. 405, 410 (Bankr.N.D.Ill.1989). The statute makes clear that fees and costs need not be awarded in all cases. *Reid,* 854 F.2d at 159. Section 303(i) distinguishes between good faith and bad faith involuntary petitions with respect to the type of recovery that may be awarded, but does not negate the court's discretion not to make any award at all under this subsection. *Id.* at 160. Congress' decision to authorize fees under § 303(i)(1)(B) also shows that bad faith on the part of the creditors is not the only situation in which attorney's fees may be awarded. *Id.*

A court "may," in its discretion, award costs, attorneys' fees, and punitive damages. The use of the word "or" in § 303(i) does not make awards of fees, costs, compensatory damages, or punitive damages into exclusive remedies among which the court can only apply one or another. *In re Fox Island Square Partnership,* 106 B.R. 962, 966 (N.D.Ill.1989).

The filing of a petition may be sanctionable for bad faith under § 303(i)(2) when a petitioner disregards facts which have an impact on the validity of their petition. *Fox Island Square Partnership,* 106 B.R. at 968. Similarly, a creditor acts in bad faith under § 303(i)(2) when it files an involuntary petition knowing it does not have the requisite number of creditors. *In re McDonald Trucking Co.,* 76 B.R. 513, 519 (Bankr.W.D.Pa.1987).

Poterek & Sons specifically seeks the following from the petitioning creditors as consequential damages under § 303(i)(1) for the improper filing of the bankruptcy petition: (1) reimbursement in the amount of $1,475.00 for 59 wire transfer charges, at the cost of $25.00 each; (2) $502.69 in interest it had to pay on the loan it received from Raypo Enterprises; (3) extra bank service charges in the amount of $382.50, and (4) attorneys' fees plus costs allowable under law.

This Court is not prepared to exercise discretion to make any award against Goodmark under § 303(i)(1). It is true that Goodmark, through its counsel, became aware of the counterclaim judgment. It matters not that its state court counsel had not filed a formal appearance to defend the counterclaim. His general appearance in bringing the suit was an appearance for all matters in that action, including counterclaims. Moreover, he was present in court when the counterclaim judgment was entered, and his knowledge of it is imputed to his client Goodmark. *See Burton v. Estrada,* 149 Ill.App.3d 965, 103 Ill.Dec. 233, 240, 501 N.E.2d 254, 260 (1986) ("Notice to an attorney while engaged in his client's business is notice to the client").

However, there was no showing that anyone in Goodmark's management who authorized the filing of the involuntary petition was actually aware from its state court attor-

2. 11 U.S.C. 303(i) provides as follows:
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
 (1) against the petitioners and in favor of the debtor for—
 (A) costs;

(B) a reasonable attorney's fee; or
(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under ... [303(g)]; or
 (2) against any petitioner that filed the petition in bad faith, for—
 (A) any damages proximately caused by such filing; or
 (B) punitive damages.

ney of the counter-claim judgment entered against it. It was not shown that this management knew it was disqualified from being a petitioning creditor in the involuntary action. Goodmark became entangled in a family business dispute primarily driven by Skiba, but was an unwise follower rather than instigator. It did not file in bad faith under § 303(i)(2). Accordingly, no judgment will enter against Goodmark Foods.

Nor is any award entered against the Esther Skiba Trust for reasons set forth above and in the Court's remarks from the bench during trial. Likewise, this creditor did not file in bad faith under § 303(i)(2).

However, the role of Skiba warrants a different result. Filing of the involuntary petition in this proceeding was based partly on an asserted debt due to Skiba that had been fully paid years earlier. Skiba knew that the debt owed him had been satisfied when he received the $42,821.05 check in 1988. Notwithstanding, he decided to carry the family disputes and litigation in other matters into bankruptcy court to get leverage over the supposed debtor. That improper decision to file an involuntary bankruptcy petition cannot be taken lightly. This action imposed great costs upon the alleged debtor and heavily taxed its resources. Based upon facts earlier described, it is appropriate that Skiba personally bear the costs, damages, and fees resulting from improper filing of the involuntary petition.

The petitioning creditors contend that there should be no award for interest on the loan obtained by Poterek & Sons from Raypo Enterprises because that loan was from an insider of Poterek & Sons and because of asserted failure at the time to seek a competitive interest rate. However, the evidence did not demonstrate that the interest rate of prime plus 2% was not in accord with customary market rates for the loan type in question at the time. If the rate was not unreasonable, the payment of it to insiders does not negate its validity as an element of damage. Accordingly the award under § 303(i) will include interest in the amount of $502.69 paid on the Raypo loan until the involuntary petition was dismissed.

All bank charges incurred for wire-transferring money during pendency of the involuntary petition are also to be allowed. However, wire transfer charges accrued after December 15, 1993, when the involuntary petition was dismissed are not allowed. While some subsequent transfers may indirectly have been necessitated by the involuntary petition, discretion is exercised to allow only those charges clearly and directly caused thereby: only 21 wire transfers at $25.00 each, totalling $525.00. Also allowed are the additional service charges debtor had to pay at the bank because it did not maintain a minimum balance. Those charges up to the time the dismissal order was entered totaled $382.50.

Additional costs, allowable pursuant to § 303(i)(1)(A), are the compensable litigation costs. They are the following: One necessary transcript of the Skiba deposition that cost $282.00; a transcript from the hearing on the bond motion for $165.00; and the necessary cost of a transcript for the final argument and the Court's remarks, amounting to $261.00.

The petitioning creditors also contend that attorney fees should not be allowed to Poterek & Sons because it was early in the proceeding that they indicated likely dismissal of their bankruptcy petition. They also argue that it was excessive for debtor to incur the requested $12,000.00 in attorneys' fees to pursue $2,300.00 in actual damages.

Section 303(i) and the case law interpreting it do not set forth standards for determining whether and to what extent an attorney's fee is warranted. *Fox Island Square Partnership*, 106 B.R. at 970. At a minimum, an attorney's fees should be for necessary work and reasonable under the circumstances. *Id.* (*citing In re Wavelength*, 61 B.R. 614, 621 (9th Cir. BAP 1986)); *York Int'l Bldg., Inc. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975). While § 303 does not require the type of fee application and standards used to seek professional fees in bankruptcy under § 330, the records submitted should clearly identify the nature of the work performed, its reasonable necessity and relevance to defense of the involuntary peti-

tion, and the time expended. *Wavelength*, 61 B.R. at 621. Since the attorneys' fee allowance under § 303(i) is analogous to an award of consequential damages the standard of proof of damages required in state courts, not the bankruptcy § 330 standard, is the appropriate standard to apply here.

■ Under § 330, an attorney's fees are presumed valid unless particular parts are denied for particular reasons.

In the ultimate analysis, an applicant seeking payment of its fees from a bankruptcy estate … is expected to provide the court and creditors with the same type of descriptive detail and to exercise the same degree of billing judgment that it would give to its most valued client. Provided that it does so, the fee produced by the resulting lodestar calculation will, presumptively be a reasonable one. Absent evidence to the contrary, the presumption of reasonableness should be respected….

*Matter of Hunt's Health Care*, 161 B.R. 971, 980 (Bankr.N.D.Ind.1993).

■ But in this proceeding, the award of attorney fees under § 303(i)(1) is not professional compensation; it is an award of damages. In *In re Better Care*, 97 B.R. 405, 413 (Bankr.N.D.Ill.1989), Judge Katz discussed the distinction between an award of attorney fees under § 303 and § 330:

Section 330 does not deal with damages but rather with a standard for the award of fees which reduces the distribution to creditors from the estate. Fees, as assessed under Section 303 are merely an element of damages. This Court agrees … that the Section 330 standards are not necessarily controlling, at least as to the fee petition criteria defined in *In re Continental Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983) … The issue here is proof of damages, which need not be shown with mathematical certainty….

*Better Care*, 97 B.R. at 413 (citations omitted).

■ Only the proven cost or value of reasonable and necessary fees actually incurred are to be allowed here as damages. On the trial record, it was established that $5,000.00 was actually paid to counsel for movants. No evidence, expert or otherwise, was offered as to the value and necessity of additional fees sought, but the need for counsel to appear here for 12 hours of trial time was self-evident. A total of $7,100.00 will be allowed for attorneys' fees, including the $5,000.00 already paid by the client plus 12 additional hours of trial time for pursuing this motion at counsel's current and customary hourly rate of counsel ($175/hour), amounting to $2,100.00. In the absence of additional evidence supporting the fee claim, it is concluded that, while debtor's counsel had the obligation to pursue dismissal of this bankruptcy case vigorously, the reasonableness and necessity of all additional work claimed for has not been established by movant, as was its burden.

■ Finally, we must address the question of whether debtor is entitled to recover punitive damages against the petitioning creditors. A finding of bad faith is necessary for the award of any punitive damages under § 303(i)(2). *Better Care*, 97 B.R. at 410. For reasons stated above, the Court will not assess punitive damages against Goodmark, which was drawn into this family battle, or against the Esther Skiba Trust, whose actions were directed by Skiba.

■ Should punitive damages be assessed against Skiba? In determining whether to allow such damages, and the correct amount, federal courts apply federal standards. *See, e.g., In re Laclede Cab Co.*, 76 B.R. 687, 694 (Bankr.E.D.Mo.1987).

In defining whether bad faith exists under § 303(i)(2) so as to justify punitive damages, courts have taken numerous different approaches. One line of authority applies a subjective standard and finds bad faith to exist when the filing of the petition was motivated by ill will, malice, or for the purpose of harassing or embarrassing the debtor (also known as the "improper purpose test"). *In re Better Care*, 97 B.R. 405, 410 (Bankr. N.D.Ill.1989) (citations omitted); *Basin Electric Power Cooperative v. Midwest Processing Co.*, 47 B.R. 903, 909 (D.N.D.1989) (citations omitted). Some courts have developed a two-prong test, looking at both subjective and objective factors. *See, e.g., United*

*States Fidelity & Guar. Co. v. DJF Realty & Supplies,* 58 B.R. 1008, 1101 (Bankr. N.D.N.Y.1986). Another line of cases finds that a petition is filed in bad faith when the creditor's actions amount to an improper use of the Bankruptcy Code as a substitute for customary collection procedures. *Id.* Still other courts have analyzed whether a plan has been filed in bad faith by referring to Bankruptcy Rule 9011, based on Fed. R.Civ.P. 11. *See, e.g., Id.; In re Fox Island Square Partnership,* 106 B.R. 962, 968 (Bankr.N.D.Ill.1989); *In re Turner,* 80 B.R. 618, 623–24 (Bankr.D.Mass.1987); *In re Laclede Cab Co.,* 76 B.R. 687, 691 (Bankr. E.D.Mo.1987). *Turner* held that:

> Rule 9011 appears to be all-encompassing in the indicia of bad faith which it sets forth, including a significant objective requirement bearing on the legal justification of a claim of defense; a reasonable inquiry into the facts and the law. It is therefore logical to adopt its standards in a § 303(i)(2) case in order to avoid conflicting standards.

80 B.R. at 623.

■ Since Rule 9011 punishes sins of careless omission that do not amount to bad faith, the Court cannot follow those cases looking to that Rule for the test of a bad faith filing under § 303(i). Here, Skiba filed a petition falsely claiming that the debt formerly due him was still due. He filed that petition for the improper purpose of harassing and embarrassing the alleged debtor and to obtain additional leverage in collecting a debt sued on in state court. This was at once a false pleading, an improper purpose, and a knowing misuse of the Bankruptcy Code. Skiba's conduct in this regard was a classic demonstration of bad faith.

3. Rule 9011 provides in part:
Every ... pleading ... served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least ... one attorney of record ... The signature of an attorney ... constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good

■ Punitive damages are intended to punish and deter improper conduct. Since this is allowed here on top of actual damages, the punitive award need not exceed $1,000.00 to accomplish that purpose. That will be the award.

### Sanctions Under Fed.R.Bankr.P. 9011

■ Debtor also seeks sanctions under Fed.R.Bankr.P. 9011 against both Skiba and the petitioning creditor's attorney, Capitel. Motions for sanctions in the bankruptcy court are governed by that Rule. Fed. R.Bankr.P. 9011[3] is almost identical to former Fed.R.Civ.P. 11, and cases interpreting former Rule 11 are applicable to Bankruptcy Rule 9011 issues. *In re Chapman,* 154 B.R. 258, 265 (Bankr.N.D.Ill.), *aff'd.* 159 B.R. 812 (1993), *citing In re Memorial Estates, Inc.,* 132 B.R. 19, 22 (Bankr.N.D.Ill.1991).

Fed.R.Civ.P. 11 was recently amended (effective December 31, 1993, after the involuntary proceeding was dismissed), while Fed. R.Bankr.P. 9011 was not. However, since the standard under Bankruptcy Rule 9011 is virtually the same as the standard under old Fed.R.Civ.P. 11, the cases interpreting former Fed.R.Civ.P. 11 apply here.

■ Rule 9011 imposes four requirements on an attorney or party signing a motion or pleading:

■ There must be a "reasonable inquiry" into both fact and law; [2] there must be a good faith (that is, the paper may not be interposed "to harass"); [3] the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and [4] the lawyer must believe that the complaint is "well grounded in fact."

faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a document is signed in violation of this rule, the court on motion or on its own initiative shall impose on the person who signed it ... an appropriate sanction.
(Emphasis supplied.)

*In re Chapman,* 154 B.R. 258, 266 (Bankr. N.D.Ill.1993), *citing Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991).

▪ Rule 9011 consists of both a subjective and an objective element. As observed in *Mars Steel Corp. v. Continental Bank, N.A.:*

> [i]f a paper is "interposed for any improper purpose," it is sanctionable even if it is warranted by existing law and supported by the facts. *Mars Steel,* 880 F.2d at 931–32. On the other hand, a paper filed with the purest of intentions is sanctionable if a reasonable inquiry was not made beforehand.

*Mars Steel,* 880 F.2d 928, 931 (7th Cir.1989).

▪ The signature of Skiba and his attorney on the involuntary petition constituted a certificate under Rule 9011 that they had read the document and that, to the best of their knowledge, information, and belief formed after reasonable inquiry, the petition was well grounded in fact and warranted by existing law or a good faith extension of law. The investigative requirement of Rule 9011 was designed to prevent frivolous or insupportable pleadings. *In re Reveley,* 148 B.R. 398, 408 (Bankr.S.D.N.Y.1992) (citations omitted). To satisfy this requirement, the petitioning creditors and their counsel here were required to make a reasonable inquiry into the existence of the elements necessary for the filing of an involuntary petition.

▪ When, as here, evidence shows that the petitioners' attorney only conducted a perfunctory investigation before filing, the court may find that Rule 9011 has been violated whether or not subjective bad faith was present. *Ridge v. U.S. Postal Service,* 154 F.R.D. 182 (N.D.Ill.1992) (decided under former Fed.R.Civ.P. 11).

▪ Rule 9011 provides sanctions for failure to make reasonable inquiry into facts. Bad faith is not required, but bad faith certainly warrants sanctions.

In this case, Skiba knew that the $40,-000.00 debt earlier due to him had been repaid. Accordingly, his participation in the involuntary bankruptcy filing was in bad faith, and thereby in violation of Rule 9011 as well as § 303(i)(2). Skiba knew that there were insufficient creditors to file the involuntary petition because he was disqualified, so he attempted to resurrect a debt to him paid long ago. In doing so, he violated Bankruptcy Rule 9011. Under that Rule, the Court "shall" impose a sanction for such conduct. Accordingly, Skiba must pay to movants a sanction under Rule 9011.

▪ A Rule 9011 sanction must also be imposed against petitioning creditor's counsel, Capitel. Capitel argues that, while his client did not intentionally deceive him with respect to the nature of the debts, the client never revealed that the $42,821.05 had been paid on either debt. However, the evidence established that Capitel did not make sufficient inquiry about Skiba and the Esther Skiba Trust debts. Capitel represented Skiba in his state court action seeking dissolution of the corporation, in which Skiba asserted many claims but did not seek payment of the $40,000.00 debt. Moreover, Capitel also represented the Esther Skiba Trust in state court on its claims based on the same debt it asserted here. But in computing that claim in state court, no credit was given for the $42,821.05 check in 1988 that Skiba claimed was for the Esther Skiba Trust debt, not his debt. Capitel should have sought more information about the alleged $40,000.00 due Skiba, the debt due the Esther Skiba Trust, and any payments made on either of those claims. Under the circumstances and given his knowledge of detail concerning the claims in state court, Capitel's reliance upon the promissory notes and his client's bald statements that the Skiba debt was still outstanding was not reasonable.

▪ In his defense, Capitel also argues that, if he had seen the canceled check written to Skiba in the amount of $42,821.05, he would not have filed the involuntary petition. He argues it is unfair for him to be sanctioned when debtor's counsel was "withholding" evidence which would have prevented the bankruptcy from being filed. Counsel for the alleged debtor says that he did not produce the canceled check until trial because he did not know it was a necessary piece of evidence until, on the eve of trial, he received the petitioning creditors' lists of ex-

hibits and thereby finally learned the basis of Skiba's alleged claim. Although this litigation could have been resolved more expeditiously if the old canceled check had been produced sooner, Capitel's lack of adequate inquiry remains sanctionable under Rule 9011. If there was any delay of opposing counsel to produce all documents during litigation, that does not excuse counsel's failure to conduct a reasonable investigation of facts behind his complaint or petition before filing it. Counsel must bear some consequence for the improper and harmful involuntary petition.

Since actual proven damages to Poterek & Sons are being compensated under § 303(i) by Skiba, the function of the instant sanction is punitive, not compensatory. It is therefore limited to $1,000.00 to be paid by Skiba, the same amount separately paid by Capitel.

### CONCLUSION

For the forgoing reasons, movant's request for attorneys' fees, costs, and punitive damages pursuant to 11 U.S.C. § 303(i) is denied as to the Esther Skiba Trust and Goodmark Foods, both petitioning creditors. However, against Skiba the motion under § 303(i) is allowed as to costs in the total amount of $708.70 and attorneys' fees in the amount of $7,100.00. Also allowed are damages consisting of $525.00 for wire transfer costs, additional bank fees of $382.50, and interest paid by debtor to Raypo Enterprises in the amount of $502.69. Punitive damages in the amount of $1,000.00 are also allowed under § 303(i)(2)(A). Under Fed.R.Bankr.P. 9011, a sanction of $1,000.00 is also assessed against Skiba, and a separate sanction of $1,000.00 is assessed against petitioning creditor's counsel, Capitel. All other relief sought by debtor is denied for reasons stated herein.

Capitel paid in open court the $1,000.00 sanction assessed against him after it was announced from the bench. Therefore, it is unnecessary to enter any judgment thereon.

Pursuant to the foregoing Findings of Fact and Conclusions of Law, separate judgments will be entered against Skiba pursuant to Fed.R.Bankr.P. 7058 for the separate amounts allowed under § 303(i) and Rule 9011. Judgments absolving Goodmark and the Esther Skiba Trust will also be entered.