**In re Daniel PACZESNY, Debtor.**

**No. 01 B 39749.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 21, 2002.

Cindy M. Johnson, Susan D. Kozlowski, Johnson & Associates, Chicago, IL, for Windsor Thomas Group, Inc.

Donald L. Bertelle, Chicago, IL, for Debtor.

Phillip D. Levey, Chicago, IL, trustee.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JACK B. SCHMETTERER, Bankruptcy Judge.

Windsor–Thomas Group, Inc. ("Windsor") filed an involuntary Chapter 7 Bankruptcy Petition against Daniel Paczesny ("Paczesny") on November 13, 2001. Paczesny failed to respond to the involuntary petition and an order for relief was entered on December 10. However, Paczesny subsequently filed a motion to vacate the order for relief and for dismissal of the case. In light of the history discussed below, that motion was granted and the bankruptcy case was dismissed on February 25, 2002. Paczesny then moved for sanctions against Windsor and its counsel Cindy Johnson and Susan Kozlowski pursuant to 11 U.S.C. § 303(i)(1). Both counsel representing Windsor were dismissed as respondents to the sanction motion under an agreed order on the eve of trial. After hearing witnesses and argument from both sides, and based on entry of the following Findings of Fact and Conclusions

of Law, an Order under § 303(i)(1) and Judgment thereon will be entered by separate order in favor of Paczesny in the amount of $12,068.16.

## JURISDICTION

Jurisdiction over this matter lies pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding under § 157(b)(1). This matter is referred here under the standing referral of District Court Internal Operating Procedure 15(a).Venue is proper in this district under 28 U.S.C. § 1409(a).

### Findings of Fact

1. Soon after lending $24,000 to Paczesny in early February of 1999, Windsor obtained a judgment for $71,101.50 against Paczesny in Polk County, Florida. The judgment was obtained by confession agreed to by an attorney selected by Windsor without notice to Paczesny.

2. On December 13, 2000, after the Florida judgment became incontestable under Florida law, Windsor filed a petition to register its judgment in the Circuit Court of Cook County, Illinois. This proceeding was the first notice to Paczesny concerning the Florida judgment. On March 14, 2001, the Circuit Court entered an Order registering the Florida judgment in the amount of $83,919.05.

3. However, on October 11, 2001, a judge of the Circuit Court of Cook County granted Paczesny's motion to vacate registration of the Florida judgment because that judge determined that the Florida court did not have personal jurisdiction over Paczesny. The court further ruled that the Florida judgment had been obtained by fraud.

4. On November 9, 2001, Windsor filed a motion for reconsideration of the Circuit Court order. On the very next business day, November 13, Windsor filed an involuntary Chapter 7 Bankruptcy against Paczesny attempting to collect on the same judgment which had been refused for registration by the Circuit Court order.

5. On December 10, 2001, Windsor appeared in this court to obtain an order for relief. Windsor failed to inform the court that the Florida Judgment had been contested in Circuit Court nor was the court advised that the registration order had been vacated. Thus, absent this information and without any input from Paczesny who did not appear at the hearing, this court entered an order for relief.

6. Between December 10 and February 25, 2002, Paczesny fought vigorously for an order lifting the stay so that a final Circuit Court Judgment could be entered. Windsor fought with equal vigor to block such an order, but that order was entered and the Circuit Court denial of registration later became final.

7. On February 25, 2002, this court dismissed the bankruptcy after concluding that the Windsor involuntary petition was invalid because, in the light of the ruling by the Illinois judge, there was a bona fide dispute as to the underlying debt.

8. The instant motion seeking $12,648.16 in fees and costs was filed on March 7, 2002.

9. Factual matters set forth in the Conclusions of Law will stand as additional Findings of Fact.

### Conclusions of Law

*Section 303(i)(1)*

Section 303(i)(1) allows debtors to recover attorney fees and costs related to an involuntary bankruptcy that was dismissed without consent:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judg-

ment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or (B) a reasonable attorney's fee....

11 U.S.C. § 303(i)(1).

■ Bankruptcy judges have discretion whether to grant a motion under § 303(i)(1). *In re Reid,* 854 F.2d 156, 159 (7th Cir.1988). There are no criteria in the statute to guide the decision whether to allow damages, but one Circuit Court opinion stated that the decision of the bankruptcy judge should be "inform[ed]" by a finding of bad faith on the part of the petitioner. *Id.* at 160. As the *Reid* panel opinion pointed out, the statute does require a finding of bad faith before a court may impose punitive damages under § 303(i)(2). *Id.* Thus, by negative implication it appears that Congress did not intend to require such a finding under 303(i)(1). *Id.* The parties here debated this issue in their briefs and at trial. However, having concluded herein below that Windsor has acted in bad faith, this court need not decide whether a finding of bad faith is a prerequisite to § 303(i)(1) sanctions.

■ Bad faith can be shown by a creditor filing an involuntary petition when it knows that it cannot meet the requirements of § 303(b)(1). *In re Poterek & Sons, Inc.,* 169 B.R. 896, 905 (Bankr. N.D.Ill.1994) (Schmetterer, J) Here, Windsor knew when it filed its petition that the state court had already found a bona fide dispute as to whether the underlying judgment debt had been obtained by fraud. A further indication of Windsor's bad faith is that it failed to inform this court of the state court proceedings when it appeared here to obtain an order for relief. Windsor now argues that it had a good faith belief that this court was bound to honor the Florida judgment under the "*Rooker–Feldman* doctrine," even though the Illinois court had declined to register that judgment.

The *Rooker–Feldman* doctrine forbids lower federal courts from overturning state court judgments. *Remer v. Burlington Area School District,* 205 F.3d 990, 996 (7th Cir.2000) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). It is rooted in the Constitution which limits the power to review state court decisions to the Supreme Court. *Id.* Windsor has not offered any authority for its claim that *Rooker–Feldman* required this court to credit the Florida judgment, even after its registration had been refused by an Illinois court judgment. Windsor cannot rely on its argument that *Rooker–Feldman* would compel this court to set aside the Illinois state court judgment when the very purpose of the doctrine is to prevent lower federal courts from doing just that.

A foreign judgment that is registered in this state is treated like a judgment of the courts of this state and is therefore "subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court for any county of this State...." 735 ILCS 5/12–652(a). Thus, once the Illinois state court declined to register the Florida judgment because it was subject to defenses under Illinois law, that judgment could not be used to support an involuntary bankruptcy petition.

■ Windsor's assertion that it believed that its claim was not subject to a bona fide dispute because at least part of the claim was uncontested is equally implausible. Under the standard in this Circuit, a creditor does not qualify to file an involun-

tary petition if there is a factual or legal dispute as to the validity of a debt. *Matter of Busick*, 831 F.2d 745, 749–750 (7th Cir.1987). Windsor argues that there is authority for allowing an involuntary petition where at least some part of the underlying debt is not disputed. Indeed, Windsor could have filed a claim for only the amount it asserts is uncontested, but it chose not to do so. As was stated by this court in *Poterek*, petitioning creditors assume the risk that their claim may be dismissed when they file an involuntary petition. *In re Poterek & Sons, Inc.*, 169 B.R. 896, 905 (Bankr.N.D.Ill.1994) (Schmetterer, J). Moreover, the policy of discouraging meritless petitions, which is codified by § 303(i)(1), would be undermined if a creditor could avoid sanctions by showing that some part of a partially bogus claim was valid. Windsor must now accept the consequence of its decision to overreach by filing a claim that it knew was the subject of a bona fide dispute.

Under the circumstances set forth above, the Windsor involuntary petition was filed in bad faith.

*Amount of Damages Allowed*

 Attorney fees allowed under § 303(i)(1) are not subject to the same scrutiny as professional fees requested under 11 U.S.C. §§ 330 or 331. That is because "the award of attorney fees under § 303(i)(1) is not professional compensation; it is an award of damages." *In re Poterek*, 169 B.R. at 907 (citing *In re Better Care, Ltd.*, 97 B.R. 405, 413 (Bankr. N.D.Ill.1989)). Thus, attorney fees under § 303(i)(1) are compensatory and utility to the estate is not a relevant factor in considering such fees. *Id.* at 413. However, only fees that are reasonable and necessary will be allowed under § 303(i)(1). *Id.* At the hearing, extensive testimony was offered on the fees requested by Paczesny. Evidence showed that the normal hourly billing rate of counsel for alleged Debtor is $200.00 per hour. No evidence contradicted the reasonableness of that rate which therefore was used to compute attorney fees awarded in this case based on hours of reasonable and necessary work demonstrated. Paczesny seeks $12,480.00 in attorney fees and $168.16 in costs, for a total of $12,648.16. From the record adduced at trial, it is found and concluded that a total of $580.00 in attorney's fees should be deducted from that request for reasons more fully stated from the bench at the hearing and because those fees related to other litigation between the parties in state court. Thus, $12,068.16 will be allowed and judgment will be separately entered for Paczesny.