**In re Michael H. MELTZER,**
**Alleged Debtor.**

**No. 13 B 31151.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Signed Aug. 27, 2014.

Howard Leventhal, pro se.

Malgorzata Kubiak, pro se.

No appearance for Pegasus Electronics HK Ltd.

Joel A. Stein, Jeffrey E. Schiller, Deutsch, Levy & Engel, Chartered, Chicago, IL, for alleged debtor Michael H. Meltzer.

## MEMORANDUM OPINION

A. BENJAMIN GOLDGAR,
Bankruptcy Judge.

When Malgorzata Kubiak stopped paying rent and her landlord, Michael Meltzer, tried to evict her, Kubiak's ex-husband, Howard Leventhal, started a litigation campaign meant to stall the eviction and harass Meltzer. The campaign—which included a frivolous district court action under the Fair Housing Act, two attempts to remove Meltzer's eviction action to the district court, the filing of a lis pendens against Meltzer's property, and a frivolous action in the state court to "foreclose" on the lis pendens—culminated in the filing of an involuntary bankruptcy petition against Meltzer. The petition was premised on disputed and even fictitious claims, and one of the petitioning creditors was phony, a Hong Kong corporation Leventhal had formed only two weeks before.

The involuntary petition was eventually dismissed on Meltzer's motion. Now before the court after an evidentiary hearing are his requests for sanctions against the petitioners under section 303(i) of the Bankruptcy Code and Bankruptcy Rule 9011 and for relief under section 303(k).

For the reasons discussed below, Meltzer's requests will be granted. This bankruptcy case was filed in bad faith, the petition was not only false but fraudulent, and the petition was filed for an improper purpose. Meltzer is therefore entitled to relief under section 303(k) as well as to sanctions under section 303(i) and Rule 9011, including attorney's fees, costs, and punitive damages. (Meltzer concedes he has no quantifiable actual damages other than attorney's fees). The matter will be continued for Meltzer to prove up his attorney's fees and costs.[1] It will also be continued for the parties to brief (1) the appropriate amount of punitive damages, and (2) the propriety of Meltzer's request under Rule 9011 for an order permanently barring Leventhal and anyone associated with him from filing papers in this court.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). *See In re Glannon*, 245 B.R. 882, 887 (D.Kan.2000); *In re Letourneau*, 422 B.R. 132, 135 (Bankr. N.D.Ill.2010). Although the case has been dismissed, the court retains jurisdiction to consider the requests for relief under sections 303(i) and (k) and Rule 9011. *See Glannon*, 245 B.R. at 886; *Letourneau*, 422 B.R. at 135.

### 2. Facts

The following facts are drawn from the testimony at the hearing, the exhibits admitted into evidence, the docket of the bankruptcy court, and the docket of the district court in a related matter.[2]

---

1. Over Leventhal's objection, the hearing was bifurcated. (Tr. at 84–89). Evidence was received only on whether relief under sections 303(i) and (k) and Rule 9011 was warranted. Questions of the precise relief to be awarded, if any, were deferred.

2. The bankruptcy court can take judicial notice of its own records, *In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr.N.D.Ill.2011), as well as the records of other courts in related matters, *SG & Co. N.E., LLC v. Good*, 461 B.R. 532, 535 n. 3 (Bankr.N.D.Ill.2011).

### a. The Lease

Michael Meltzer is a resident of Littleton, Colorado, where he has lived since 1999. (Tr. at 109–10). Before 1999, he lived in a home at 5687 Rosos Parkway, Long Grove, Illinois, that he owned. (*Id.* at 110). Apparently, Meltzer kept the Rosos Parkway property after moving to Colorado, because in 2006, he started renting it out. (*Id.*).

On December 10, 2009, Howard Leventhal entered into a lease with Meltzer for the Rosos Parkway property. (Tr. at 110–11; *see* Meltzer Ex. 14). The term of the lease was two years, expiring on December 9, 2011. (Meltzer Ex. 14 at 1).

At the time Leventhal and Meltzer entered into the lease, Leventhal was married to Malgorzata ("Meg") Kubiak. (Tr. at 111–12). Both lived at the Rosos Parkway property and paid the rent. (*Id.*). Some time in 2010, however, Leventhal and Kubiak apparently decided to divorce. (*See id.* at 112). Leventhal stopped paying rent in July or August 2010; when Meltzer asked about the unpaid rent, Leventhal suggested that he "contact my soon-to-be ex-wife." (*Id.*).

From then on, Meltzer assumed Leventhal had moved out (although, Meltzer said, "I had doubts about that") and began treating Kubiak as the tenant. (*Id.*). In February 2012, Meltzer signed a letter agreement renewing the lease but with Kubiak rather than Leventhal as lessee. (Meltzer Ex. 15). The lease was renewed for an additional year; the term expired on December 10, 2012. (*Id.*).

For a time, Kubiak made the rental payments. (*Tr.* at 113). Then, in 2012, she stopped. (*Id.* at 113–14). When Melt-

zer contacted her about the unpaid rent, Kubiak said she intended to buy the property but could not until she received a discharge in a pending bankruptcy case, something she expected to receive on June 30, 2012. (*Id.* at 113).[3] In May 2012, Meltzer began to lose patience and told her he wanted to "wrap it up by May 15th." (*Id.*). If that did not happen, he said, he would take legal action. (*Id.*).

Evidently, Kubiak neither bought the property nor became current on the rent, because on June 25, 2012, Meltzer served her with a 30–day notice terminating the tenancy. (*See* Meltzer Ex. 3 at 6; Ex. 5 to Meltzer Ex. 3). Kubiak responded by threatening to sue Meltzer under the Fair Housing Act if he did not let her remain in the property. (Tr. at 116; Ex. 7 to Meltzer Ex. 3).

### b. The FHA Action and the Forcible Entry and Detainer Action

On August 27, 2012, Kubiak made good on her threat, filing an action against Meltzer in the district court. (Tr. at 117; *see* Meltzer Ex. 3); *see Kubiak v. Meltzer, et al.,* No. 12 C 6849 (N.D.Ill.) (the "FHA action"). Kubiak alleged in her complaint that Meltzer had sexually harassed her by suggesting that when his terminally ill wife died, he would move into the property and "cohabitate with Kubiak," reducing her rent. (Meltzer Ex. 3 at 3). The complaint named as defendants not only Meltzer but also his wife, his father, and the lawyers representing him in his landlord-tenant dispute with Kubiak. (*Id.* at 1).

Two weeks later, Meltzer filed a forcible entry and detainer action (the "eviction action") against Kubiak in Illinois state court. (Tr. at 114; *see* Meltzer Ex. 16). Kubiak immediately removed the eviction

---

**3.** Leventhal and Kubiak had filed a joint chapter 7 bankruptcy petition in March 2010. *See In re Howard E. Leventhal and Malgorzata J. Kubiak–Leventhal,* No. 10 B 12257 (Bankr. N.D.Ill.). Although Kubiak told Meltzer she expected her discharge in June 2012, she and Leventhal had received a discharge two years earlier, on June 30, 2010. (*Id.* Dkt. No. 32).

action to the district court (Tr. at 118; Dist. Ct. Dkt. No. 5),[4] and Meltzer immediately moved to remand it (Dist.Ct.Dkt. No. 19). In March 2013, the district court granted the motion to remand, returning the eviction action to the state court. (*Id.* No. 66). Kubiak moved for reconsideration, but her motion was denied. (*Id.* No. 72).

From December 2012 to August 2013, Kubiak and Meltzer discussed settlement of the FHA action. (*See id.* Nos. 36–44, 47, 67, 77, 89, 94–95, 99). Leventhal sought to participate in the discussions (*id.* Nos. 44, 45), but the district court refused to let him (*id.* Nos. 44, 66). When it became clear Leventhal would not be allowed to participate, Kubiak refused to continue the discussions (*see id.* Nos. 68, 100), and the district court ordered Meltzer to answer or otherwise plead to Kubiak's complaint (*id.* No. 102). In its order, the district court specifically noted: "To the extent that [Kubiak] believes that [Meltzer] is in default for not filing an answer, she is incorrect. The Court stayed the filing of the answer while the parties attempted to settle the matter." (*Id.*).

Meanwhile, Meltzer proceeded with his remanded eviction action, filing an amended complaint in April 2013. (Meltzer Ex. 17). The amended complaint alleged that Kubiak owed $47,900 in unpaid rent as well as $2,400 in late charges under the lease. (*Id.* at 3).

In August 2013, the eviction action came to a head. On August 1, Leventhal sent Meltzer's attorney an e-mail stating that unless a settlement were reached, he and Kubiak would file an involuntary bankruptcy petition against Meltzer. (Meltzer Ex.

36). "As you know," Leventhal said, "until a bankruptcy is discharged, legal claims [of the debtor] become part of the bankruptcy estate and may only be litigated by the bankruptcy trustee, not by the debtor." (*Id.*).

The threat must not have discouraged Meltzer, because on August 2 he filed a motion in the eviction action seeking a judgment of possession. (*See* Meltzer Ex. 18 at 20). The motion was set for hearing on August 7. (*Id.*).

### c. The Involuntary Bankruptcy Case

On August 5, 2013, two days before the hearing in the eviction action, Leventhal, Kubiak, and Pegasus Electronics HK Ltd., a Hong Kong corporation, filed an involuntary bankruptcy petition against Meltzer. (Meltzer Ex. 1; Tr. at 71). Although the petition bore what appeared to be the signatures of Leventhal and Kubiak, there was no hand-written signature for Pegasus. The Pegasus signature line displayed an electronic signature for "Pauline Ng, atty." (*Id.*). The petition gave the same Hong Kong address for Pegasus and for Ng. (*Id.*).

Attached to the petition were three documents, each styled "Co–Petitioner's Memorandum in Support of Involuntary Bankruptcy Petition." (*Id.* at 3–13). Each memorandum purported to describe the particular petitioner's claim against Meltzer.

• The Pegasus memorandum asserted that Meltzer was obligated to Pegasus "in the amount of HKD 58,284.72 or approximately 7,514.50 U.S. dollars at the most recent exchange rate." (*Id.* at 4). No basis was given for the Pegasus claim. The Pegasus memorandum bore what ap-

---

4. The docket from the FHA action was admitted into evidence at the hearing (*see* Meltzer Ex. 4), as were some of the papers filed and orders entered in the action. Judicial notice can be taken of the rest, including Kubiak's removal petition. *See* discussion, *supra*, at 2 n. 2.

peared to be an ink-stamped (rather than hand-written) signature for Pauline Ng. (*Id.*).

• Leventhal's memorandum asserted that Meltzer owed him $4,238.64 because Meltzer had "fraudulently informed the Lake County Department of Public Works" that Leventhal was "financially responsible for . . . water and sewer service" at the Rosos Parkway property, Leventhal had paid the bills, and Meltzer had refused to reimburse him "despite numerous demands." (*Id.* at 6). Attached to the memorandum was a water and sewer bill for the property showing "Howard Leventhal" as the customer. (*Id.* at 8).

• The Kubiak memorandum asserted that Meltzer owed her $2.5 million based on the claim in the FHA action. (*Id.* at 10). Kubiak added that because Meltzer had not filed an answer to the complaint, he had "admitted my claim against him and . . . not disputed the amount claimed." (*Id.*). Attached to the memorandum was the first page of Kubiak's complaint in the action. (*Id.* at 12–13).

The Pegasus claim was bogus. Pegasus was incorporated on July 19, 2013, just two weeks before the involuntary case was filed. (Meltzer Ex. 26 at 2).[5] Leventhal was the corporation's sole shareholder and sole director. (*Id.*). Pauline Ng, who purportedly signed the petition as attorney for Pegasus, was neither an attorney nor a Pegasus employee; she worked for Conpak Management Consultants, Ltd., the company that had handled the incorporation. (*Id.*). When contacted, she denied signing the memorandum attached to the petition. (Meltzer Ex. 27 at 4, 6).[6]

Asked at the hearing whether he was the founder, sole shareholder, and president of Pegasus, Leventhal refused to answer, invoking his Fifth Amendment privilege. (Tr. at 90–91). He also invoked the privilege when asked whether he had prepared the Pegasus memorandum accompanying the petition. (*Id.* at 92–93). And he invoked the privilege again when asked whether Pegasus had ever sold anything to Meltzer or demanded payment from him. (*Id.* at 92). Meltzer denied doing business with Pegasus and ever having heard of the company. (*Id.* at 157).

The Leventhal claim was equally bogus. The lease between Meltzer and Leventhal contained a paragraph entitled "Utilities and Services." (Meltzer Ex. 14 at 2). That paragraph provided: "In addition to the monthly rent specified above, *Lessee* shall be responsible for payment of the following (check all that apply)." (*Id.*) (emphasis added). There followed a series of boxes, all of which were checked. One was entitled: "Water/Sewer." (*Id.*). Meltzer testified that Leventhal had previously paid all the water and sewer bills and had never claimed Meltzer was responsible for them. (Tr. at 158).

Leventhal offered no evidence at the hearing to the contrary. Asked whether he had ever written Meltzer demanding payment of the bills, Leventhal refused to answer, invoking his Fifth Amendment privilege. (*Id.* at 93). He invoked the privilege again when asked whether he had signed the memorandum concerning his claim. (*Id.*).

---

5. Meltzer Exhibit 26 was the affidavit of Sunny Hathiramani, a Hong Kong solicitor. Leventhal objected to the affidavit's admission into evidence only on the basis of relevance. (Tr. at 31). The objection was overruled. (*Id.*).

6. Meltzer Exhibit 27 was an e-mail exchange between Ng and Meltzer's attorney. Leventhal objected to the admission of the e-mails only on the basis of relevance. (Tr. at 31). The objection was overruled. (*Id.*).

The Kubiak claim, though an actual claim, was unadjudicated and still pending in the district court when the involuntary case was filed. Although Meltzer had not yet answered the complaint, he had not done so because the district court had stayed the filing of an answer. (Dist.Ct. Dkt. No. 102). Meltzer was actively disputing the claim and on September 20, 2013, after the stay was lifted, moved to dismiss the complaint (Meltzer Ex. 10)—a motion the district court ultimately granted on the ground that Kubiak's allegations of sexual harassment were "simply implausible" (Meltzer Ex. 13 at 3; *see Kubiak v. Meltzer,* No. 12 C 6849, 2014 WL 258707, at \*2 (N.D.Ill. Jan. 23, 2014)).

At the hearing, Meltzer denied sexually harassing Kubiak, making statements to her about sexual matters of any kind, telling her she did not have to pay rent, or telling her she could avoid paying rent for any length of time. (Tr. at 134–35). Asked whether he knew whether Kubiak's claim was disputed, Leventhal invoked his Fifth Amendment privilege. (*Id.* at 93). He also invoked the privilege when asked whether he had prepared and signed the Kubiak memorandum that accompanied the petition. (*Id.* at 92–93).

### d. Judgment in the Eviction Action

After filing the involuntary bankruptcy petition on August 5, Leventhal (on behalf of Kubiak) e-mailed copies of the papers in the case to Meltzer's attorney and announced: "Your client is now the subject of bankruptcy proceedings." (Meltzer Ex. 38). Leventhal noted that Meltzer had 30 days to respond to the petition. Leventhal continued: "If, in the interim, he elects to pull his head out of his ass and revisit the idea of a simple settlement, please be certain to advise Mr. Orlowsky [apparently Kubiak's attorney in the eviction action] of same." (*Id.*).

That same day, Meltzer submitted an application to this court seeking leave to file an emergency motion to dismiss the involuntary case. (Btcy.Dkt. No. 2). Meltzer asserted that an emergency existed because of the August 7 hearing in the eviction action; he called the petition an improper effort to "impact a state court proceeding." (*Id.* at 1). The application was denied because there was no emergency. (Btcy. Dkt. No. 4; *see* Tr. at 46). The order noted Kubiak's contention that "the filing of the involuntary bankruptcy case divests the alleged debtor of the right to pursue the action" but concluded she was mistaken:

> The filing of the case did create a bankruptcy estate, *see* 11 U.S.C. § 541(a), true enough, and the alleged debtor's rights against Kubiak are property of the estate, *Cable v. Ivy Tech State College,* 200 F.3d 467, 472–73 (7th Cir.1999). But under section 303(f) of the Code, 'the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced' until an order for relief is entered. 11 U.S.C. § 303(f).

(*Id.*). Because no order for relief had been entered, "the filing of the bankruptcy does not affect the alleged debtor's rights to proceed against Kubiak in the state court." (*Id.*). And since there was no effect on the state court proceeding, there was no reason to address dismissal on an emergency basis. (*Id.*).

Leventhal took two other steps to stall the eviction action. First, on the morning of August 7, Leventhal recorded a "Notice of Lis Pendens" against the Rosos Parkway property, filing the notice with the Lake County, Illinois Recorder of Deeds. (Meltzer Ex. 23; Tr. at 44–45). The lis pendens stated that "a lawsuit is currently pending encumbering the above captioned property," cited the involuntary bankrupt-

cy case against Meltzer, and attached the first page of the involuntary petition as well as the "Notice of Involuntary Bankruptcy Case Filing" issued by the clerk of the bankruptcy court. (Meltzer Ex. 23). Leventhal signed the lis pendens notice as "co-petitioner." (*Id.*).[7]

Second, Leventhal tried again to remove the eviction action to the district court, filing another notice of removal in the state court. (Meltzer Ex. 18; Tr. at 120). *See Meltzer v. Kubiak*, No. 13 C 5619 (N.D.Ill.). Kubiak then moved in the FHA action to have that action consolidated with the removed eviction action as well as with the involuntary bankruptcy case. (Dist.Ct. Dkt. No. 98). But the district court remanded the eviction action to the state court and denied the motion to consolidate as moot. (*See id.* No. 99).

Undeterred by the bankruptcy case or the removal notice (*see* Meltzer Ex. 20), the state court proceeded to trial in the eviction action on August 7 as scheduled. Following trial, the state court entered judgment in favor of Meltzer and against Kubiak. (Meltzer Ex. 19). Meltzer was awarded possession of the premises as well as $52,600 in damages, $5,000 in attorney's fees, and costs. (*Id.*). Enforcement of possession was stayed until August 31. (*Id.*).

After the judgment was entered, Leventhal tried to settle all of the pending actions, proposing "a global walkaway" under which all litigation would be dismissed and Meltzer would release all claims

against Kubiak, including his judgment for back rent. (*See* Meltzer Ex. 42; Tr. 78). Leventhal made this proposal repeatedly to Meltzer and to his attorneys. (Tr. at 76–79, 140–41). More than once, he coupled his proposal with threats of more litigation. In an August 23 email to Meltzer, he asked: "Let's walk away right now. Yes or no?" (Meltzer Ex. 42). When Meltzer answered "no," Leventhal responded: "Next is foreclosure on your house in Colorado." (*Id.*).

Two days later, Leventhal sent Meltzer an e-mail again demanding that the judgment against Kubiak be vacated. "Bottom line is this," he said. "You are going to have to agree to vacate the judgment against Meg." (Meltzer Ex. 39; Tr. at 130). Otherwise, Leventhal warned, there would be endless litigation:

> If you refuse permanently to vacate the judgment, the cost of such refusal will increase to infinity. There are 3,044 county courts in the U.S. and about 50 federal courts. Do not confuse my plea for rationality with any absence of resolve to continue on the very unfortunate track that we have been on.

(*Id.*). Meltzer declined Leventhal's "walk away" settlement. (Tr. at 79–80, 82–83, 141).

### e. Dismissal of the Involuntary Case

Although no summons was ever issued to Meltzer or served on him in the involuntary case, on August 16, 2013, he moved to

---

**7.** Ordinarily, a lis pendens notice does not stall pending litigation, but Leventhal believes that a lis pendens confers a lien on the filer. (*See* Meltzer Ex. 41). On August 9, Leventhal, Kubiak, and Pegasus therefore filed an action against Meltzer in the state court to "foreclose the lis pendens." (Meltzer Ex. 21). The complaint took the form of a complaint to foreclose a mortgage, giving the legal description of the Rosos Parkway property and as-

serting an "original indebtedness" of $2,511,753.14. A lis pendens, though, is simply a "notice intended to alert persons that the property in question is involved in litigation." *Kurtz v. Hubbard*, 2012 IL App (1st) 111360, 362 Ill.Dec. 528, 973 N.E.2d 924, 929 (2012). Filing a lis pendens does not create a lien. *In re Leonard*, 125 F.3d 543, 545 (7th Cir.1997); *Sobilo v. Manassa*, 479 F.Supp.2d 805, 823–24 (N.D.Ill.2007) (stating

dismiss the case. (Btcy.Dkt. No. 6). In his motion, Meltzer also sought sanctions against Leventhal, Kubiak, and Pegasus under section 303 of the Bankruptcy Code and under Bankruptcy Rule 9011. A briefing schedule was set on Meltzer's motion (*id.* No. 11), but Leventhal alone responded (*see id.* No. 15). Kubiak and Pegasus did not. Because the motion and response indicated an evidentiary hearing was necessary, a hearing on the motion was set for December 20, 2013. (*Id.* No. 21).

In setting the hearing, the court entered a form pretrial order requiring each party to file pretrial materials no later than December 9, 2013. (*Id.*). Meltzer timely filed his materials as the pretrial order required. Leventhal, Kubiak, and Pegasus, on the other hand, filed no materials and sought no extension to file them. In accordance with the pretrial order, they were barred from presenting any evidence. (*Id.* No. 35).

Because Leventhal, Kubiak, and Pegasus had the burden of proof on the question of dismissal and, unable to present evidence, could no longer meet it (*see id.* at 3–4), the hearing was stricken and the case dismissed (*id.* No. 40). All lis pendens notices filed in connection with the case were declared invalid. (*Id.*). The court retained jurisdiction to entertain Meltzer's requests for relief under section 303(k) and sanctions under section 303(i) and Rule 9011. (*Id.*).

No petitioning creditor appealed the dismissal.

### f. Post–Dismissal Proceedings

In January 2014, Leventhal moved to "dismiss" Meltzer's sanctions requests on the ground they were "defective." (*Id.* No. 44). The alleged defects were proce-

dural, in particular that Meltzer had not made his Rule 9011 request in a separate motion, as Rule 9011(c)(1)(A) requires. (*Id.*). Leventhal's point about Rule 9011 was well-taken: Meltzer had included his Rule 9011 request in his motion to dismiss. *See* Fed. R. Bankr.P. 9011(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests...."); *Divane v. Krull Elec. Co.,* 200 F.3d 1020, 1025 (7th Cir.1999). Leventhal's motion was therefore granted in part, and Meltzer's request for Rule 9011 sanctions was denied. (Btcy.Dkt. No. 53). In all other respects, Leventhal's motion was denied. (*Id.*).

Meltzer's remaining requests for sanctions were set for hearing in March 2014. (*Id.* No. 50). A final pretrial order was entered in the same form as the final pretrial order for the hearing on dismissal. (*Id.*).

Meanwhile, on January 27, 2014, Meltzer filed a new, separate motion for Rule 9011 sanctions against Leventhal, Kubiak, and Pegasus. (*Id.* No. 58). The new motion prompted Leventhal to file his own cross-motion for Rule 9011 sanctions. (*Id.* No. 65). The March evidentiary hearing was expanded to encompass both Meltzer's Rule 9011 motion and Leventhal's cross-motion. (*Id.* Nos. 60, 68).

Meltzer and Leventhal filed pretrial materials in advance of the March sanctions hearing, but Kubiak and Pegasus again filed nothing. In accordance with the pretrial order, Kubiak and Pegasus were barred from presenting any evidence, just as they had been before the hearing on dismissal. (*Id.* No. 102).

The hearing on the dueling sanctions motions went ahead on March 27, 2014.[8]

---

that "a lis pendens notice does not give the filer a lien").

**8.** In connection with the hearing, Leventhal filed a motion in limine that was denied. (*Id.*

Nos. 78, 89). The hearing went ahead although Leventhal appealed the denial of the

Kubiak did not appear for the hearing, and no one appeared on behalf of Pegasus. (Apart from Leventhal, not one of the petitioning creditors had appeared at any of the hearings in the involuntary case or taken any action in the case other than the filing of the petition itself.) Admitted into evidence at the hearing was what purported to be an affidavit from Kubiak stating:

Although I have a glancing familiarity with the fact there is litigation in this matter [i.e., the bankruptcy case], all of the filings in this matter have been filed by Howard Leventhal and I am generally unfamiliar with the content of such filings. Mr. Leventhal is not an attorney and neither am I and to the extent my signature appears on filings in this case I have not understood and do not understand the impact of such filings.

(Leventhal Ex. 2). The affidavit was notarized, but the signature appeared to be a photographic image of Kubiak's signature rather than an ink signature. (*Id.*).[9] Asked whether he had prepared the affidavit and signed it, Leventhal asserted his Fifth Amendment privilege. (Tr. at 94).

The only witnesses who testified at the hearing were Meltzer, one of Meltzer's attorneys, an attorney for a creditor of Leventhal, and Leventhal himself. Meltzer called each of the witnesses. Leventhal called none and invoked his Fifth Amendment privilege in response to all but two questions directed to him (Tr. at 90–95), refusing even to say whether he was one of the petitioning creditors in the case (*id.* at 90).

### 3. Discussion

 Meltzer is entitled to an award of attorney's fees and costs against Leventhal, Kubiak, and Pegasus under section 303(i)(1) of the Code, 11 U.S.C. § 303(i)(1), in connection with the dismissed involuntary petition. Because the dismissed petition was filed in bad faith, was false and fraudulent, and was filed for an improper purpose, Meltzer is also entitled to sanctions against Leventhal, Kubiak, and Pegasus under section 303(i)(2), 11 U.S.C. § 303(i)(2), and Rule 9011(c), Fed. R. Bankr.P. 9011(c), as well as to relief under sections 303(k)(1) and (2), 11 U.S.C. §§ 303(k)(1), (2).

### a. Sections 303(i) and (k)

Section 303(i) describes several forms of relief a bankruptcy court can award a debtor when an involuntary case is dismissed other than on the consent of all petitioners and the debtor. Section 303(i)(1) permits the court to enter judgment against the petitioners for "(A) costs; or (B) a reasonable attorney's fee." 11 U.S.C. § 303(i)(1). Section 303(i)(2) adds that if any petitioner filed the petition in "bad faith," the court can enter judgment against that petitioner for "(A) any dam-

---

motion and then moved to "stay all proceedings" in light of the appeal. (*See id.* Nos. 90, 99). An order denying a motion in limine is not appealable, *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir.2005); *Ultra–Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1358 (Fed.Cir.2003), and a purported appeal from a nonappealable order does not divest a federal trial court of jurisdiction, *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 860 n. 7 (7th Cir.2013). On August 19, 2014, the district court dismissed Leventhal's appeal. *See Leventhal v. Meltzer*, No. 14 C 2765 (N.D.Ill.).

9. Any number of documents in the record contain this photographic image, including the involuntary petition. (*See* Meltzer Ex. 1 at 11; Meltzer Ex. 11 at 1, 4; Meltzer Ex. 18 at 1, 3, 6; Meltzer Ex. 21 at 5; Leventhal Ex. 3). The photographic nature is evident, not only because the signature is light, lacks sharp edges, and looks superimposed, but because the signature is identical each time it appears. When Kubiak signs documents in ink, her signature varies slightly. (*See* Meltzer Ex. 3 at 13; Meltzer Ex. 15).

ages proximately caused by such filing; or (B) punitive damages." 11 U.S.C. § 303(i)(2).

■ Although the statute uses the disjunctive "or" (which appears not only within subsections (i)(1) and (2) but also between those subsections, *see* 11 U.S.C. § 303(i)(1)), the statutory remedies are not mutually exclusive. *See In re Mundo Custom Homes, Inc.*, 179 B.R. 566, 569 (Bankr.N.D.Ill.1995) (noting that the use of the word "or" does not mean "the Court can only award one to the exclusion of the other"); *In re Fox Island Square P'ship*, 106 B.R. 962, 966 (Bankr.N.D.Ill.1989). A court may grant "any and all" of them. *In re West Side Cmty. Hosp., Inc.*, 112 B.R. 243, 257 (Bankr.N.D.Ill.1990) (citing the legislative history). Whether to award those remedies and which ones to award are matters that rest with the court's discretion. *In re Reid*, 854 F.2d 156, 159 (7th Cir.1988); *In re Paczesny*, 282 B.R. 646, 649 (Bankr.N.D.Ill.2002).

Section 303(k) provides additional relief for an individual debtor when an involuntary petition is dismissed. Section 303(k)(1) requires the court in certain instances to seal all court records relating to the petition. 11 U.S.C. § 303(k)(1). Section 303(k)(2) permits the court to enter an order barring consumer reporting agencies from making any report about the case. 11 U.S.C. § 303(k)(2).

#### i. Section 303(i)(1)

Meltzer is entitled to an award of his reasonable attorney's fees and costs under sections 303(i)(1)(A) and (B).

■ Section 303(i)(1) allows an award of fees and costs as long as three requirements are met: "(1) the court must have dismissed the involuntary petition; (2) the dismissal must be other than on the consent of all petitioners and the debtor; and (3) the debtor must not waive its right to

recovery under the statute." *Mundo,* 179 B.R. at 569. When these requirements are met, there is a presumption in favor of an award. *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 462 (9th Cir.2010). A petitioner's bad faith is unnecessary. *Id.; Reid*, 854 F.2d at 160; *Mundo*, 179 B.R. at 569; *In re K.P. Enter.*, 135 B.R. 174, 177 (Bankr.D.Me.1992).

All three requirements are obviously met here. First, the case was dismissed. Second, the dismissal was not on consent. No petitioner agreed to dismissal, and Leventhal actively opposed it. Third, Meltzer has not waived his rights to recover his fees and costs. He first asserted them in his dismissal motion and has been pursuing them vigorously ever since. Leventhal introduced no evidence to rebut the presumption in favor of an award, and Kubiak and Pegasus have not responded to Meltzer's sanctions requests.

Because the requirements for relief under sections 303(i)(1)(A) and (B) have been met, Meltzer will be awarded his reasonable attorney's fees and costs.

#### ii. Section 303(i)(2)

Meltzer is also entitled to an award of punitive damages under section 303(i)(2)(B) against Leventhal, Kubiak, and Pegasus because they filed the involuntary case in bad faith. Indeed, the bad faith was grotesque: the case was thoroughly fraudulent and an egregious abuse of the bankruptcy system. The bad faith call is not a close one.

■ The purpose of an involuntary bankruptcy case is "to protect [against] the threatened depletion of assets or to prevent the unequal treatment of similarly situated creditors." *Letourneau,* 422 B.R. at 138 (internal quotation omitted). Creditors are justified in filing an involuntary petition "where exclusive bankruptcy powers and remedies may be usefully invoked

to recover transferred assets, to 'insur[e] an orderly ranking of creditors' claims' and 'to protect against other creditors obtaining a disproportionate share of debtor's assets.'" *In re Hentges,* 351 B.R. 758, 772 (Bankr.N.D.Okla.2006) (quoting *In re Better Care, Ltd.,* 97 B.R. 405, 411 (Bankr. N.D.Ill.1989)); *see also In re Forever Green Athletic Fields, Inc.,* 500 B.R. 413, 425 (Bankr.E.D.Pa.2013) (stating that "involuntary Chapter 7 petitions serve to prevent a debtor from choosing to pay certain creditors over other similarly situated creditors"), *aff'd,* 514 B.R. 768, No. 14–641, 2014 WL 4055852 (E.D.Pa. Aug. 13, 2014).

▇ An involuntary case is serious business. The petition is "an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid,* 773 F.2d 945, 946 (7th Cir.1985); *see also Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir. 1988); Timothy Bow, *Involuntary Petitions: Bad–Faith Motives and High Risks,* Am. Bankr.Inst. J., August 2012, at 52, 53 (noting that "an involuntary petition can grievously wound a putative debtor"). Because of these possible effects, filing an involuntary petition "should be a measure of last resort." *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 707 (9th Cir.2004).

When an involuntary petition has been filed in "bad faith," section 303(i)(2) permits the court to award the debtor actual damages, punitive damages, or both. 11 U.S.C. § 303(i)(2). Section 303(i)(2) does not define "bad faith," and courts have devised a wide variety of tests. *See Forever Green,* 500 B.R. at 425–26 (describing tests); *Mundo,* 179 B.R. at 569–70; *K.P. Enter.,* 135 B.R. at 179. The Seventh Circuit has yet to adopt a test of its own. The Sixth Circuit, however, considers the "totality of the circumstances." *See In re John Richards Homes Bldg. Co.,* 439 F.3d 248, 254 (6th Cir.2006). Since the Seventh Circuit analyzes "bad faith" and "good faith" under other Code provisions based on the "totality of the circumstances," *Mundo,* 179 B.R. at 569 (making this observation and citing decisions), it is fair to assume the court would employ that test under section 303(i)(2), *id.; see also Forever Green,* 500 B.R. at 426 (considering Third Circuit decisions and adopting a "totality of circumstances" test for similar reasons).

The circumstances here leave no doubt that Leventhal, Kubiak, and Pegasus filed the involuntary petition against Meltzer in bad faith. For starters, the petition was filed for a wrongful purpose: to stall Meltzer's eviction case against Kubiak. That much is readily apparent from Leventhal's e-mail expressly threatening an involuntary case if the eviction case were not settled. (Meltzer Ex. 36). In the same e-mail, Leventhal observed (incorrectly in an involuntary case) that once a bankruptcy case is filed, "legal claims [of the debtor] become part of the bankruptcy estate and may only be litigated by the bankruptcy trustee, not by the debtor." (*Id.*). If Meltzer did not settle, in other words, he would find himself stripped of his action. The action would grind to a halt. When Meltzer ignored the threat and moved for a judgment of possession, Leventhal, Kubiak, and Pegasus filed their involuntary petition three days later.

▇ To pursue an involuntary petition, a petitioner must have a "valid bankruptcy purpose." *Forever Green,* 500 B.R. at 425. An invalid purpose demonstrates bad faith. *Draiman v. Multiut Corp.,* Nos. 04 C 5532, 04 C 5533, 2008 WL 904778, at *6 (N.D.Ill. Mar. 31, 2008). A petitioner has no valid bankruptcy purpose—and acts in bad faith—when his goal

is to stall or disrupt litigation in another court. *See, e.g., Forever Green*, 500 B.R. at 427; *In re Merrifield Town Ctr. L.P.*, No. 09–18119–SSM, 2010 WL 5015006, at *5 (Bankr.E.D.Va. Dec. 3, 2010) (finding bad faith where petition was filed "for an improper purpose, namely, derailing the trial in another court"); *In re Privada, Inc.*, No. 07–10940 FRM, 2008 WL 4692372, at *4 (Bankr.W.D.Tex. Oct. 22, 2008) (finding bad faith where petition was "a mere litigation tactic to stall, drag out and disrupt" litigation "that was not moving in Petitioners' favor"); *In re Springs Hospitality, Inc.*, No. 06–13331 HRT, 2006 WL 2458679, at *4–5 (Bankr.D.Colo. Aug. 22, 2006) (calling involuntary case "the poster-child for bad faith" where petitioners candidly admitted filing the case only to stall other litigation); *Fox Island*, 106 B.R. at 970.

If Leventhal's express acknowledgment of the wrongful purpose were not enough, the timing of the petition and subsequent failure to pursue it are further proof of the petitioners' bad motives. The petition was filed just two days before the hearing in the eviction action. After the state court entered judgment in the action despite the involuntary filing, Leventhal, Kubiak, and Pegasus did nothing to pursue the case. No summons in the case was ever issued, let alone served. When Meltzer appeared anyway and moved to dismiss the case, only Leventhal opposed the motion, and even he did not bother to file pretrial materials before the scheduled evidentiary hearing. Kubiak and Pegasus had no involvement in the case after the petition itself.

■ The filing of an involuntary case shortly before a hearing in related litigation strongly suggests the case was filed only to stall the hearing. *See, e.g., Keiter v. Stracka*, 192 B.R. 150, 160 (S.D.Tex. 1996) (petition filed "only one day" before a scheduled foreclosure); *Forever Green*, 500 B.R. at 428 (petition filed one week before critical filing date in a related action); *Fox Island*, 106 B.R. at 968 (petition filed one week before trial in a foreclosure action). So does the petitioners' failure to pursue the bankruptcy case beyond the filing of the petition itself. *See, e.g., Forever Green*, 500 B.R. at 428 (finding bad faith where petitioners "were less than diligent in their prosecution of this proceeding"); *Privada*, 2008 WL 4692372, at *4 (finding bad faith and noting that "[n]one of the Petitioners bothered to appear in this Court to defend the Motion to dismiss"). Once it became clear that the involuntary case would not accomplish the petitioners' goal of delaying the eviction action, they abandoned the case.[10]

■ But there is more. The petition here was fraudulent, flagrantly so. Section 303(b)(1) allows an involuntary case to be filed "by three or more entities, each of which is ... a holder of a claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount...." 11 U.S.C. § 303(b)(1). Three creditors are essential unless the debtor has fewer than twelve creditors holding claims of that kind. 11 U.S.C. § 303(b)(2). If a creditor's claim is in bona fide dispute, the creditor does not qualify. *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987). A claim

---

**10.** In dismissing Kubiak's FHA action against Meltzer, the district court characterized the involuntary petition as an "attempt to delay the eviction." *Kubiak*, 2014 WL 258707, at *2. The district court went further, describing Kubiak's removal petitions in the eviction case as "an attempt to avoid and delay the eviction" and calling the FHA action itself nothing more than "a leveraging tool in an attempt to remain in Meltzer's home rent free or, at a minimum, to delay her eviction." *Id.*

is in "bona fide dispute" if there is an objective basis for either a factual or a legal dispute as to the validity of the debt. *Id.; see also In re 35th & Morgan Dev. Corp.*, 510 B.R. 832, 845–46 (Bankr.N.D.Ill. 2014).

Because Meltzer had at least twelve creditors holding non-contingent claims not in bona fide dispute,[11] three of those creditors had to join in any involuntary petition against him. The claims of Kubiak, Leventhal, and Pegasus, however, were all in bona fide dispute. When the petition was filed, Kubiak's claim was in litigation in the district court. Her claim was ultimately dismissed on Meltzer's motion as "implausible." *Kubiak*, 2014 WL 258707, at *2. The other two claims—and one of the creditors—were fictitious, fabricated to satisfy the three-creditor requirement in section 303(b)(1). Leventhal's claim was a claim for reimbursement of water and sewer bills that the lease on its face obligated Kubiak, not Meltzer, to pay. As for Pegasus, Meltzer testified credibly that he had done no business with the company and had never heard of it—credibly, because Leventhal had incorporated Pegasus only two weeks before the involuntary petition was filed, undoubtedly for the purpose of gaining the critical third creditor. The electronic signature on the petition of Pauline Ng as attorney for Pegasus was forged.

 Creditors act in bad faith when they file an involuntary petition knowing their claims are in bona fide dispute. *See, e.g., John Richards Homes*, 439 F.3d at 258; *In re Silverman*, 230 B.R. 46, 52 (Bankr.D.N.J.1998); *Fox Island*, 106 B.R. at 968. Creditors act in bad faith when they file a petition knowing they have no claims. *See, e.g., Landon v. Hunt*, 977 F.2d 829, 832 (3d Cir.1992) (affirming finding of bad faith when petitioners held claims "they knew to be without basis in either law or fact"); *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 906 (Bankr. N.D.Ill.1994) (finding bad faith where creditor "knew that the debt owed him had been satisfied"). And it goes without saying that creditors act in bad faith when they invent a third, corporate creditor solely for the purpose of joining in the petition and then forge the name of an attorney for the creditor on the petition. *Cf. Letourneau*, 422 B.R. at 138 (finding Rule 9011 violation where petition bore the forged signatures of three creditors who had no claims against the debtor).

The petitioners here never contended they filed the petition against Meltzer in good faith, for a proper purpose.[12] Leven-

---

11. Meltzer asserted in his motion to dismiss that he had more than twelve such creditors. (Btcy. Dkt. No. 6 at 2). That assertion has never been disputed.

12. Leventhal opposes Meltzer's sanctions request under section 303(i)(2) on the sole ground that Meltzer was given the chance early on to settle on a "global walkaway" basis and refused. (Tr. at 76–79, 140–41). Therefore, any damage to Meltzer was self-inflicted. (*Id.* at 186–88). Without some proof of damage from the involuntary case itself, Leventhal insists, sanctions cannot be awarded. (*Id.* at 189–91). There are three problems with Leventhal's position. First, having been subjected to a fraudulent, bad

faith involuntary petition, Meltzer did not have to accept Leventhal's invitation to pretend nothing had happened, to let bygones be bygones. He was entitled to pursue his remedies under section 303 and Rule 9011. Second, there is little question Meltzer incurred attorney's fees in connection with the involuntary case. (*See id.* at 133–34). Fees assessed under section 303(i)(1)(B) are considered damages for purposes of section 303(i)(2)(A). *Paczesny*, 282 B.R. at 650; *Mundo*, 179 B.R. at 570. Third, proof of actual damage is not a prerequisite to an award of punitive damages under section 303(i)(2)(B). *S. Cal. Sunbelt*, 608 F.3d at 465 (holding that section 303(i)(2)(B) "expressly authorizes a stand alone award of punitive damages").

thal offered no evidence of his own at the hearing and did not try to justify the petition. Under questioning from Meltzer, Leventhal instead asserted his Fifth Amendment privilege on nearly every subject, declining to say (among other things) whether he had signed the petition and even whether he was one of the petitioners in the case. (Tr. at 90–95). Because this is a civil matter, adverse inferences can be drawn from Leventhal's assertions of the privilege. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *In re High Fructose Corn Syrup Antitrust Litig.,* 295 F.3d 651, 663 (7th Cir.2002); *see, e.g., Letourneau,* 422 B.R. at 140 (drawing adverse inference from refusal to answer questions about filing of involuntary petition). Those inferences confirm what the bulk of the evidence plainly shows.

As for Kubiak and Pegasus, they did not oppose dismissal of the petition, did not appear for the sanctions hearing, and have not opposed Meltzer's requests for sanctions. At the hearing, Leventhal offered into evidence what purported to be an affidavit from Kubiak saying she had only a "glancing familiarity" with the case. (Leventhal Ex. 2). Asked whether he had written and signed the affidavit himself, however, Leventhal again invoked his Fifth Amendment privilege. (Tr. at 93–94). An adverse inference can be drawn from his invocation of the privilege that the affidavit was a fake and Kubiak's signature forged. *Baxter,* 425 U.S. at 318, 96 S.Ct. 1551. But even if Kubiak's familiarity with the case really was only "glancing," she had no right to file a thoughtless involuntary bankruptcy petition against Meltzer, one with no "valid bankruptcy pur-

pose." *Forever Green,* 500 B.R. at 425. She, too, filed the petition in bad faith. *Cf. Keiter,* 192 B.R. at 158 (affirming Rule 9011 sanctions against involuntary petitioner's wife and co-petitioner despite her contention that "she was a passive participant in any wrongdoing").[13]

Because the petition Leventhal, Kubiak, and Pegasus filed against Meltzer was filed to stall litigation in the state court and was thoroughly fraudulent, the petition was filed in bad faith. Meltzer will be awarded punitive damages against the petitioners under section 303(i)(2)(B) in an amount to be determined.

### iii. Section 303(k)

Next, Meltzer is entitled to relief under sections 303(k)(1) and (2), Code provisions that authorize relief for individual debtors in dismissed involuntary cases.

Section 303(k)(1) authorizes the sealing of all court records relating or referring to a dismissed petition. For the records to be sealed, four requirements must be met. First, the petition must either be "false" or must contain some "materially false, fictitious, or fraudulent statement." 11 U.S.C. § 303(k)(1)(A). Second, the debtor must be "an individual." 11 U.S.C. § 303(k)(1)(B); *see* 2 *Collier on Bankruptcy* ¶ 303.37[2] at 303–120 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). Third, the case must be dismissed. 11 U.S.C. § 303(k)(1)(C). Fourth, the debtor must request the relief. 11 U.S.C. 303(k)(1)(C); *see* 2 *Collier, supra* ¶ 303.37[2] at 303–121. If these requirements are met, relief is mandatory: the court "shall" seal its records. 11 U.S.C. § 303(k)(1); *see Exelon Generation Co. v. Local 15, IBEW,* 676 F.3d 566, 571 (7th

---

**13.** If Kubiak was not in fact a petitioner here and the entire case was the project of Leventhal alone, Kubiak never protested that was so—although she had notice of all of the pro-

ceedings, including notice of Meltzer's sanctions requests, and so had plenty of opportunity to protest.

Cir.2012) (noting that "shall" is "mandatory and generally forecloses discretion").

Each of these requirements is satisfied here. The debtor, Meltzer, is an individual, the petition against him was dismissed, and Meltzer has moved for relief. Most important, the petition against Meltzer was not only false but contained materially false, fictitious, and fraudulent statements. The records of this case must be sealed.

Section 303(k)(2) provides individual debtors with an additional remedy. When an involuntary petition is dismissed, the court may prohibit "all consumer reporting agencies" from "making any consumer report" (as those terms are defined the Fair Credit Reporting Act) that contains any information relating to the petition or the case. 11 U.S.C. § 303(k)(2). The debtor need not move for this relief; the statute does not require a motion. Since the court "may" enter such an order, *id.*, relief is also discretionary; 2 *Collier, supra* ¶ 303.37[3] at 303–121; *see Pruitt v. Mote,* 503 F.3d 647, 653 (7th Cir.2007) (noting that "may" "clearly connotes discretion" (internal quotation omitted)).

Relief is entirely appropriate here. Again, the petition that Leventhal, Kubiak, and Pegasus filed against Meltzer was wholly fraudulent, not only replete with falsehoods but part of a larger effort to turn a routine landlord-tenant dispute into major federal litigation. The petition should never have been filed. As one well-known authority has observed, a bankruptcy on a credit report can negatively affect a person's credit score, limiting his ability to obtain credit, insurance, and employment. *See 2 Collier, supra,* ¶ 303.37[3] at

303–122. "The value of nonreporting" under section 303(k)(2) therefore "cannot be underestimated." *Id.* at 303–121. Meltzer should not have his credit worthiness damaged as a result of the petition here. An order will be issued barring credit reporting agencies from issuing reports about this case.

### b. Rule 9011

Finally, Meltzer is entitled to sanctions against Leventhal, Kubiak, and Pegasus under Bankruptcy Rule 9011(c), Fed. R. Bankr.P. 9011(c), because the involuntary petition was filed for an improper purpose, Fed. R. Bankr.P. 9011(b)(1).

Rule 9011 is the bankruptcy analogue of Rule 11 of the Federal Rules of Civil Procedure and is "essentially identical" to Rule 11. *In re Collins,* 250 B.R. 645, 659 (Bankr.N.D.Ill.2000) (internal quotation omitted). Like Rule 11, Rule 9011 is intended to deter baseless and abusive litigation and litigation tactics. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Corley v. Rosewood Care Ctr., Inc.,* 388 F.3d 990, 1013 (7th Cir.2004); *Troost v. Kitchin (In re Kitchin ),* 327 B.R. 337, 366 (Bankr.N.D.Ill.2005).[14]

Under Rule 9011(b), an attorney or unrepresented party who presents "a petition, pleading, written motion, or other paper" to the court, whether by "signing, filing, submitting, or later advocating," makes four certifications. Three are certifications that the legal assertions in the case have a basis in the law (or a fair argument for the law's modification), and the factual contentions and denials in the case have evidentiary support or are likely

---

**14.** *Cooter & Gell* and *Corley* concerned Rule 11, not Rule 9011. Because the rules are largely the same, case law under Rule 11 is helpful in the interpretation of Rule 9011. *Baermann v. Ryan (In re Ryan),* 411 B.R. 609, 613 (Bankr.N.D.Ill.2009) (noting that "courts

look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011"); *Collins,* 250 B.R. at 659 (stating that "Rule 11 precedents may be applied to make decisions under Rule 9011").

to after a reasonable opportunity for investigation. Fed. R. Bankr.P. 9011(b)(2)-(4). The fourth, relevant here, is a certification that the paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr.P. 9011(b)(1).

The "improper purpose clause" in Rule 9011(b)(1) targets abusive litigation practices. *Letourneau*, 422 B.R. at 138; *Ryan*, 411 B.R. at 615; *Kitchin*, 327 B.R. at 366. It prohibits the filing of a paper for any improper purpose, " 'whether or not [the paper] is supported by the facts and the law, and no matter how careful the prefiling investigation.' " *Ryan*, 411 B.R. at 615 (quoting *Kitchin*, 327 B.R. at 366); *see also Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001).

In determining whether Rule 9011(b)(1) has been violated, the critical question is *why* the allegedly offending paper was filed. *Letourneau*, 422 B.R. at 138; *Kitchin*, 327 B.R. at 366; *Collins*, 250 B.R. at 661; *see also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987). That question is answered by considering whether " 'objectively ascertainable circumstances' " support the inference that the purpose of the filing was improper. *Ryan*, 411 B.R. at 615 (quoting *Collins*, 250 B.R. at 662); *see also Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994) ("We determine whether a party's conduct was imposed for an improper purpose by an objective standard."); *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988).

■ Why the petitioners filed their involuntary petition against Meltzer is a question that has already been answered in detail. Again, as the district court noted, the petition's main purpose was to delay the eviction action against Kubiak,

*see Kubiak*, 2014 WL 258707, at *2, on the erroneous theory that the bankruptcy filing would wrest the claim from Meltzer and put it in the hands of the trustee (*see* Meltzer Ex. 36). The petition was also part of a broader campaign of abusive litigation intended to torment and harass Meltzer. Federal litigation filed solely for harassment and delay violates Rule 9011(b)(1). *See In re Volpert*, 110 F.3d 494, 501 n. 11 (7th Cir.1997); *Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir.1994); *Collins*, 250 B.R. at 663–64. The involuntary petition was filed for an improper purpose under Rule 9011(b)(1) for the same reason it was filed in bad faith under section 303(i). *Cf. Poterek*, 169 B.R. at 909 (finding that an involuntary petition filed in bad faith also violated Rule 9011).

Just as Leventhal does not dispute the bad faith nature of the petition, he does not claim that it was filed for any legitimate bankruptcy purpose. He opposes Meltzer's request for Rule 9011 sanctions only on the ground that the request was untimely.

Leventhal is mistaken. The Seventh Circuit imposes a deadline for Rule 11 motions that presumably also applies to motions under Rule 9011. In *Kaplan v. Zenner*, 956 F.2d 149 (7th Cir.1992), the court held that Rule 11 motions must be filed no later than 90 days after the entry of judgment. *Id.* at 152. And the 90–day deadline merely represents "the outer parameters of the timeliness for sanctions claims." *Id.* "[W]here appropriate," the court added, "such motions should be filed at an earlier time—as soon as practicable after discovery of a Rule 11 violation." *Id.* At a minimum, then, a party must bring his motion in "a reasonable amount of time," with reasonableness dependent on "the specific facts and circumstances in a given case." *Id.*

Since *Kaplan,* the Seventh Circuit has repeatedly reaffirmed this scheme. *See, e.g., Matrix IV, Inc. v. American Nat'l Bank & Trust Co.,* 649 F.3d 539, 552–53 (7th Cir.2011) (finding timely a motion brought 23 days post-judgment); *Sullivan v. Hunt,* 350 F.3d 664, 666 (7th Cir.2003) (finding untimely a motion brought 198 days after judgment); *Divane,* 200 F.3d at 1027–28 (finding timely a motion brought 1½ years post-judgment where movant's delay was not wrongful, respondent knew of movant's intent to request sanctions, and respondent could show no prejudice). The scheme's purpose is to discourage parties from unnecessary delay in seeking sanctions. *Burda v. M. Ecker Co.,* 2 F.3d 769, 774 (7th Cir.1993).

Meltzer did not delay seeking Rule 9011 sanctions. He could hardly have moved faster. The petition against him was filed on August 5, 2013. (Btcy.Dkt. No. 1). Although he had yet to be served with the petition and a summons, he filed his motion to dismiss—a motion that included his Rule 9011 request—on August 16, only 11 days later. (*Id.* No. 6). Leventhal, at least, was well aware of the request, since he mentioned it in his October 7 response. (*Id.* No. 15). After the involuntary case was dismissed on December 18, Leventhal also moved to "dismiss" the sanctions request (*id.* No. 44), and that motion was granted on January 22, 2014, because the request had not been made in a separate motion (*id.* No. 53). Five days later, on January 27, Meltzer filed a new, separate motion requesting Rule 9011 sanctions. (*Id.* No. 58).

The new Rule 9011 motion was timely under the circumstances here. The motion was filed 40 days after dismissal of the case, well within the 90–day outer limit. *See Matrix IV,* 649 F.3d at 552–53. In fact, Meltzer had technically sought sanctions much earlier, on the heels of the petition itself. The post-dismissal motion was necessary only because of the separate motion requirement. Had Meltzer complied with that requirement, moreover, filing a separate motion back on August 16 rather than incorporating the sanctions request in his motion to dismiss, it would have made no difference. Sanctions still would not have been considered until after the hearing on dismissal, since the sanctions request concerned the petition itself. *See Kaplan,* 956 F.2d at 152 (noting that in the case of pleadings, sanctions are "normally ... determined at the end of the litigation" (internal quotation omitted)).

Because Leventhal, Kubiak, and Pegasus filed the petition against Meltzer for an improper purpose in violation of Rule 9011(b)(1), Meltzer is entitled to sanctions against them under Rule 9011(c)(2). Since he will receive his reasonable attorney's fees and costs under section 303(i), Meltzer seeks an order under Rule 9011 permanently barring Leventhal and his associates from filing papers in this court. The parties will be required to brief the appropriateness of such an order.

### c. Leventhal's Cross–Motion for Rule 9011 Sanctions

Meltzer's sanctions requests are not the end of the matter. Leventhal (but neither Kubiak nor Pegasus) has cross-moved for Rule 9011 sanctions against Meltzer. The gist of the motion is that in filing his own Rule 9011 motion, Meltzer failed to comply with the rule's "safe harbor" requirement.[15]

---

15. Leventhal also complains that Meltzer filed his motion without proper notice, that the motion did not have a proposed order attached, and that one of Meltzer's attorneys

"made direct contact" with an Assistant U.S. Attorney in a criminal matter pending in the Eastern District of New York captioned *United States v. Leventhal,* No. 1:13–cr–00695–

Leventhal's motion will be denied. Like Rule 11, Rule 9011 contains what is sometimes called a "safe harbor" requirement. Under Rule 9011(c)(1)(A), a motion for sanctions must be served but "may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected...." Fed. R. Bankr.P. 9011(c)(1)(A). Unlike Rule 11, though, the safe harbor in Rule 9011 has an exception. Rule 9011(c)(1)(A) continues: "this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)." *Id.*

■ As numerous courts have observed, then, a party seeking sanctions based on the filing of a petition need not comply with the safe harbor requirement by first giving the other party an opportunity to withdraw the offending document. *See, e.g., In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 100 (3d Cir.2008); *In re Silberkraus,* 336 F.3d 864, 868 (9th Cir. 2003); *In re Dental Profile, Inc.,* 446 B.R. 885, 899 (Bankr.N.D.Ill.2011); *In re Brown,* 319 B.R. 876, 878 n. 1 (Bankr. N.D.Ill.2005). This is true for involuntary as well as voluntary petitions. *See, e.g., Levey v. Kesser Cleaners Corp.,* No. 06–CV–02530 (DLI), 2007 WL 2177048, at *3 (E.D.N.Y. July 27, 2007). The reason is simple: "The filing of a petition has immediate serious consequences ... which may not be avoided by the subsequent withdrawal of the petition." Fed. R. Bankr.P. 9011 advisory committee's note (1997).

The violation of Rule 9011(b) in this case was the filing of the petition itself. That was the basis of Meltzer's original request

for Rule 9011 sanctions in his motion to dismiss and is the basis of the Rule 9011 motion he submitted post-dismissal. Because the Rule 9011 motion takes aim at the petition, Meltzer did not have to comply with the safe harbor requirement, and he did not violate Rule 9011 for failing to comply with it.

Leventhal's cross-motion for Rule 9011 sanctions against Meltzer must be denied.

### 4. Conclusion

Alleged debtor Michael Meltzer is entitled to sanctions against petitioners Howard Leventhal, Malgorzata Kubiak, and Pegasus Electronics HK Ltd. under section 303(i) and Rule 9011, including attorney's fees, costs, and punitive damages. Meltzer is also entitled to relief under section 303(k). Meltzer's sanctions requests are continued for further briefing on (1) the appropriate amount of fees, costs, and punitive damages, and (2) the propriety of an order permanently barring Leventhal and anyone associated with him from filing anything in this court. A separate scheduling order will be entered. Leventhal's cross-motion for Rule 9011 sanctions against Meltzer is denied. A separate order will be entered.

BMC (E.D.N.Y.). (Btcy. Dkt. No. 62 at 8). None of these actions constitutes a violation of Rule 9011.